

```
SOUTHERN DISTRICT OF MISSISSIPPI
        FILED
    MAR 1 3 2023
      ARTHUR JOHNSTON
BY_____ DEPUTY
```

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**Robert J. Ray,**                                                   **PLAINTIFF**

VS.                              CIVIL ACTION NO. 3:23-cv-00065-KHJ-MTP

**Google, LLC d/b/a YouTube,**                                       **DEFENDANT**

## AMENDED COMPLAINT

COMES NOW the Plaintiff and shows the following:

### JURISDICTION AND VENUE

1. This is an action for breach of contract. The Court has jurisdiction of the parties and the subject matter, being that the amount in controversy is more than $75,000.00 and the Plaintiff is a resident of this State while the Defendant is a non-resident.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332(a) and a Jury Trial is demanded.

3. The actions of the Defendant breached a contract between the Parties and were committed within the Southern District of Mississippi.

### PARTIES

4. Plaintiff, Robert J. Ray, doing business as "The Organism Chapter 4", is an adult resident natural citizen of the United States of America and of the State of Mississippi, whose residence address is 20125 Mosby Road, Apartment F-4, Meridian, Lauderdale County, Mississippi 39307.

5. Defendant, **Google, LLC d/b/a YouTube,** (hereinafter "Google"), is a business entity doing business in Mississippi and in Lauderdale County, Mississippi by internet commercial transactions and its address is 1600 Amphitheater Parkway, Mountain View, CA 94043.

1

## FACTS

6.  General Contractual monetary relationship of the Parties.

(A) Google operates a system of generating advertising revenue through YouTube, revenue that is paid by advertising because of the quality of content that Google receives and publishes on YouTube, a video platform on the Internet available for public viewing, under contracts it makes with persons such as Plaintiff, who own original video creations, wherein those suppliers are authorized by Google to place such video creations on YouTube and Google allows for a fee commercial entities to have Google embed their advertising on the video creations. Google calculates the number of "views" of such content and represents to potential commercial entities the potential worth of their buying advertising space the video creations, and the fees charged by Google is calculated based upon the number of views of the video creations.

(B) Nobody is allowed by Google to have its video creations on YouTube, except ones who signs a contract with Google, wherein Google promises payment of "ad revenue" to the supplier after it is "monetized", based upon number of "views" of the embedded advertising.

C) Google places this content on YouTube for the sole purpose of generating to it fees from those who it allows to have their ads embedded in the individual's content on YouTube.

7.  (A) Plaintiff in December, 2020 contracted with the Defendant's YouTube division to become an authorized "content creator", by which Plaintiff would be assigned a "Channel" on which he was to place his created videos and Defendant would permit him to place these on Plaintiff's Channel at its YouTube division, whereby this content would be available for public viewing and Defendant would compensate Plaintiff according to the number of public views. The details of the inception and development of the contract relationship, i.e. its content, is located on the Internet at "support. google.com" under the section entitled "YouTube Partner Program overview and eligibility-Google". Plaintiff was not allowed to download the contract.

2

(B) Defendant, in the contract, imposed a pre-condition on Plaintiff, before he was paid *anything* that he be "monetized", meaning that Plaintiff had to have 1000 "subscribers" i. e. those members of the public who reported to Google that they "subscribed" to the content on Plaintiff's channel and a total of 4000 watch hours by the general public.

(C)   Upon achieving monetization, Plaintiff would be paid for the previous views and then the compensation was to be exclusively based a percentage of the fees paid by entities contracting with Defendant to have their advertising on Plaintiff's content.

(D) Plaintiff agreed to the pre-conditions and Defendant allows Plaintiff to have a dedicated Channel on YouTube where Plaintiff began to post his copyrighted "The Organism Chapter 4", a valuable original process for professional development and alcohol and drug counseling therapy and he posted other creations and commentary., thus such being publicized to a broad public audience.

(E)  After these pre-conditions were met, the contract provided that Plaintiff would be paid the sum of up to $22.00 per public view of his content occurring during the monetization period.

(F) Plaintiff, in December 2020 began his posting and after about 8 months, having posted some 50 videos on YouTube, Plaintiff satisfied the Defendant's two pre-conditions for monetization with of his videos generating 50,000 views, another 40,000 views, another 15,000 views with several videos with 10,000 or less, all totaling over 317,000 views..

(G) During this 8 month period the Defendant sold multiple advertising that it attached to Plaintiff's content, sometimes loading a single video of Plaintiff's with several advertisements and billed the advertisers between $5 and $18 per view of the advertising by a member of the public.

8.   (A) Not having paid Plaintiff for the monetization period on a per-view amount of $22.00 per view, the Defendant, in breach of the agreement, imposed a third pre-condition to payment by Google that advertisers contract with Defendant through Defendant's "Adsense" division for placement of advertisements to be embedded in each of Plaintiff's videos and that

advertising had to reach a total of $100.00, based by Google upon a payment schedule as low as $.05 per ad.

(B) Plaintiff remonstrated against this additional pre-condition because it substantially diminished Plaintiff's expectations of revenue that had been intentionally created in him based upon what now is apparent deceptive representations. This new pre-condition was not stated in the contract and he was entitled to be paid for the views during the monetization period.

(C) With Google already in possession and control of Plaintiff's valuable videos, and having gained a perpetual license to his postings through these contracts of adhesion and products of deception, Plaintiff had to accept this added pre-condition to any payment to him.

9.   (A) Thereafter Defendant disclosed to Plaintiff on his dedicated channel a "Money Chart" that informed Plaintiff, of the progress of the accumulation of Plaintiff's revenue from advertisers, showing him that the monetary success of the content on his channel was outstanding and Defendant continued to do so.

(B) Such, along with the number of views associated with each video, reasonably induced in Plaintiff an expectancy of great revenue after he met the, now three, contractual pre conditions to payment.

(C) Plaintiff was further reasonably expectant of great revenue, because he knew that Google had legal responsibility to its investors and to the Securities and Exchange Commission to speak the truth.

10.   (A) Factually reflecting the popularity and quality of Plaintiff's posted videos, this from the number of views and popular advertisers in his videos, the Defendant sent Plaintiff an email letter informing him of the dollar amount of his accumulated revenue under the contractual relationship, informing Plaintiff that the amount owed him was $7.5 Million. '

(B) Defendant has never paid Plaintiff this, or additional amounts owed him under the contract.

11. Defendant has continued to the present to generate unto itself, without any payment made to Plaintiff and Plaintiff states that he is owed $15,000,000.00 at least.

12. Plaintiff alleges that his valuable property is published to the World and thus he has lost its value and this has caused great mental pain and suffering in the amount of $3,000.000.00.

13. Plaintiff further alleges that he is entitled to punitive damages, in the amount of $20,000,000.00.

14. Plaintiff is entitled to a reasonable attorney fee due to the conduct of the Defendant.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Court:

A.  enter a judgment against the Defendant for compensatory and consequential damages in the amount of $18,000,000.00

B. enter a judgment against the Defendant for punitive damages in the amount of $20,000,000.00;

C.  enter a judgment for reasonable attorney's fees and all costs of court against the Defendant.

D.  grant such other relief as shall be meet and proper in the premises.

RESPECTFULLY SUBMITTED,

*Robert J. Ray*

Robert J. Ray, Plaintiff, pro se
20125 Mosby Road, Apartment F-4
Meridian, Mississippi 39307
Telephone 602-604-5443
email: robertray601@comcast.net

Dated: January 25, 2023

### VERIFICATION

COUNTY OF LAUDERDALE, STATE OF MISSISSIPPI

After being first put upon my oath or affirmation, I, **Robert J. Ray**, do hereby depose and state that the facts, matters, circumstances and claims set forth in the above **Amended Complaint** are true and correct.

This February 28th, 2023.

Robert J. Ray

Sworn to and subscribed before me by Robert J. Ray on this the 28th day of February, 2023.

MY COMMISSION EXPIRES:
6-24-2024

NOTARY PUBLIC

*[Notary Seal: STATE OF MISSISSIPPI, CARLA E. DORMAN, NOTARY PUBLIC, ID No. 199675, Commission Expires June 24, 2024, CLARKE COUNTY]*

Certificate of Service

I, Robert J. Ray, pro se, hereby certify that I have this date served a true copy of the Amended Complaint by first class U. S. Postal Service addressed to the following:

DANIEL J. MULHOLLAND, #38569
T. JOEL FYKE, #104938
201 St. Charles Avenue, Suite 2100
New Orleans, LA 70170
Telephone: (504) 799-4383
Facsimile: (504) 799-4384
Daniel.Mulholland@formanwatkins.com

Done this the 9 day of March, 2023.

Robert J. Ray