1  MATTHEW R. REED, State Bar No. 196305
   WILSON SONSINI GOODRICH & ROSATI
2  Professional Corporation
   650 Page Mill Road
3  Palo Alto, CA 94304-1050
   Telephone: (650) 493-9300
4  Facsimile:  (866) 974-7329
   Email:  mreed@wsgr.com
5

6  LAURA N. HERNANDEZ, State Bar No. 344641
   WILSON SONSINI GOODRICH & ROSATI
7  Professional Corporation
   One Market Plaza, Spear Tower, Suite 3300
8  San Francisco, CA  94105-1126
   Telephone: (415) 947-2000
9  Facsimile:  (866) 974-7329
   Email:  lhernandez@wsgr.com
10
   *Attorneys for Defendant*
11 GOOGLE LLC d/b/a YOUTUBE

12

13                   UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                     SAN FRANCISCO DIVISION

16

17 ROBERT J. RAY,                      )  CASE NO.:  3:23-cv-04222-TSH
                                       )
18          Plaintiff,                 )  **DEFENDANT GOOGLE LLC'S**
                                       )  **NOTICE OF MOTION AND MOTION**
19      v.                             )  **TO DISMISS PLAINTIFF'S FIRST**
                                       )  **AMENDED COMPLAINT;**
20 GOOGLE, LLC d/b/a Youtube,          )  **MEMORANDUM OF POINTS AND**
                                       )  **AUTHORITIES IN SUPPORT**
21          Defendant.                 )  **THEREOF**
                                       )
22 _____       )
                                          Judge: Honorable Thomas S. Hixson
23                                        Courtroom: E, 15th floor
                                          Hearing Date: November 9, 2023
24                                        Time: 10:00 a.m.

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................. 1

STATEMENT OF REQUESTED RELIEF ............................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 2

INTRODUCTION ................................................................................................... 2

FACTUAL AND PROCEDURAL BACKGROUND ............................................... 3

    A.   Three Agreements Govern Plaintiff's Participation in YouTube's Partner Program. ...................................................................................... 3

    B.   Plaintiff's Claims Against Google and Procedural Background. .................. 5

ARGUMENT ......................................................................................................... 6

I.   LEGAL STANDARD ........................................................................................ 6

II.   PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT ........ 7

    A.   Plaintiff Cannot Allege Google Breached a Contract Term that Does Not Exist, Much Less One Contrary to the Express Terms of the Agreement. ............ 8

III.   THE GOVERNING AGREEMENTS AND ESTABLISHED LAW INDEPENDENTLY BAR PLAINTIFF'S REQUESTED RELIEF ....................... 9

    A.   Plaintiff Waived His Right to Bring This Action Under the YouTube and AdSense Agreements. ......................................................................... 10

    B.   Established Law Does Not Entitle Plaintiff to Recover Punitive Damages, Damages for Pain and Suffering, or Attorney's Fees. ........................... 11

CONCLUSION ..................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allied Trend Int'l, Ltd. v. Parcel Pending, Inc.*,
 2019 U.S. Dist. LEXIS 85526 (C.D. Cal. Mar. 25, 2019) .................................................. 9

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................... 6, 7

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) .................................................................................................... 6

*BladeRoom Grp. Ltd. v. Emerson Elec. Co.*,
 20 F.4th 1231 (9th Cir. 2021) ............................................................................. 11, 12

*Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
 2 Cal. 4th 342 (1992) ................................................................................................. 9

*Daniels v. Alphabet Inc.*,
 2021 U.S. Dist. LEXIS 64385 (N.D. Cal. Mar. 31, 2021) ................................................. 3

*Darnaa, LLC v. Google Inc.*,
 236 F. Supp. 3d 1116 (N.D. Cal. 2017), *aff'd*, 756 F. App'x 674 (9th Cir.
 2018) .......................................................................................................................... 12

*Epstein v. Wash. Energy Co.*,
 83 F.3d 1136 (9th Cir. 1996) ....................................................................................... 7

*Erlich v. Menezes*,
 21 Cal. 4th 543 (1999) ............................................................................................... 12

*Feldman v. Google Inc.*,
 513 F. Supp. 2d 229 (E.D. Pa. 2007) ......................................................................... 11

*Free Range Content, Inc. v. Google Inc.*,
 2016 U.S. Dist. LEXIS 64365 (N.D. Cal. May 13, 2016) ............................................ 11

*Ghazali v. Moran*,
 46 F.3d 52 (9th Cir. 1995) ............................................................................................. 7

*Gonzalez v. Planned Parenthood of L.A.*,
 759 F.3d 1112 (9th Cir. 2014) ...................................................................................... 7

*Gray v. Don Miller & Assocs., Inc.*,
 35 Cal. 3d 498 (1984) ................................................................................................. 12

*Jacobsen v. Filler*,
 790 F.2d 1362 (9th Cir. 1986) ...................................................................................... 7

*Kay v. Ehrler*,
 499 U.S. 432 (1991) .................................................................................................... 12

*Kelly v. Cubesmart*,

2023 U.S. Dist. LEXIS 107496 (N.D. Cal. June 21, 2023) ................................. 7

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ............................................................................. 3

*Lance Camper Mfg. Corp. v. Republic Indem. Co. of Am.*,
    44 Cal. App. 4th 194 (1996) ................................................................................ 9

*Lewis v. YouTube, LLC*,
    244 Cal. App. 4th 118 (2015) .............................................................................. 7

*Murphy v. Hartford Accident & Indem. Co.*,
    177 Cal. App. 2d 539 (1960) ............................................................................... 8

*Oasis West Realty, LLC v. Goldman*,
    51 Cal. 4th 811 (2011) ........................................................................................ 7

*Order of United Commercial Travelers v. Wolfe*,
    331 U.S. 586 (1947) .......................................................................................... 10

*Patent Scaffolding Co. v. William Simpson Constr. Co.*,
    256 Cal. App. 2d 506 (1967) ............................................................................. 11

*Schneider v. YouTube, LLC*,
    2023 U.S. Dist. LEXIS 1878 (N.D. Cal. Jan. 5, 2023) .................................... 10

*Scott v. Sec. Title Ins. & Guarantee Co.*,
    9 Cal. 2d 606 (1937) ........................................................................................... 8

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ............................................................................... 7

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ............................................................................... 7

*Wietschner v. Monterey Pasta Co.*,
    294 F. Supp. 2d 1102 (N.D. Cal. 2003) ............................................................. 7

**RULES**

Fed. R. Civ. P. 8(a) ..................................................................................................... 7

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 1, 6, 7

## NOTICE OF MOTION AND MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on November 9, 2023, at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom E, 15th Floor of the United States District Court for the Northern District of California, located at the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA, 94102, before the Honorable Thomas S. Hixson, Defendant Google LLC ("Defendant" or "Google") will, and hereby does, move this Court for an order dismissing the First Amended Complaint brought by Plaintiff Robert J. Ray without leave to amend. The motion is based upon this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities in support thereof; the [Proposed] Order filed concurrently herewith; the pleadings, records, and papers on file in this action including the Declaration of Brian Hawkins in Support of Defendant Google LLC's Motion to Transfer or, in the Alternative, Dismiss for Failure to State a Claim ("Hawkins Decl."), and its exhibits, ECF Nos. 8-1 through 8-4, respectively; oral argument of counsel; and any other matters properly before the Court.

## STATEMENT OF REQUESTED RELIEF

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant requests that the Court dismiss Plaintiff's First Amended Complaint without leave to amend.

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should dismiss Plaintiff's First Amended Complaint without leave to amend under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff has not stated and cannot state a claim upon which relief can be granted.

/ / /

/ / /

/ / /

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff, a YouTube user proceeding *pro se*, alleges he was a participant in the YouTube Partner Program, a program through which eligible YouTube users can receive a share of advertising revenues generated in connection with videos they upload to YouTube. Plaintiff appears to further allege that the YouTube Terms of Service, the YouTube Partner Program Terms, and the Google AdSense Online Terms of Service govern his participation in the program. Yet Plaintiff claims that Google breached a non-existent contractual term—purporting to entitle him to $22 for each view of the videos he uploaded to his YouTube channel—in hopes of realizing a payout totaling $38,000,000 for money he thinks he is due.

Plaintiff's claims are based either on a misunderstanding or a complete reimagination of the parties' contract. The YouTube Partner Program Terms are clear: Plaintiff is entitled to 55% of net revenues from advertisements displayed in conjunction with his videos, *not* a fixed dollar amount calculated on a per-view basis. The District Court in the Southern District of Mississippi, where Plaintiff's case originated, agrees: "None of the terms mention the $22.00-per-view payment to which Ray refers." Order granting Defendant's Motion to Transfer Venue or, in the Alternative, Dismiss for Failure to State a Claim ("Tr. Ord.") at 3, ECF No. 19. Plaintiff cannot conjure a supposed contract term from thin air, then state a claim by charging Google with breaching the fictional term. That is especially true where the contract term he has invented contradicts the terms of the parties' integrated, written agreement. In short, Plaintiff cannot state a claim for breach of contract.

But the deficiencies in Plaintiff's First Amended Complaint do not end there. He also waived any right to recover under two separate clauses of the governing agreements: a Limitation on Legal Action clause, which requires he bring his claim within one year of accrual (he did not), and a payment dispute clause, requiring he attempt to resolve this dispute through Google's appeal process before filing suit (again, he did not). Even if he could bring his claim, Plaintiff is not entitled to recover punitive damages, damages for pain and suffering, or attorney's fees as a matter of law.

For these reasons, Plaintiff's claim fails and Google respectfully requests that the Court dismiss the First Amended Complaint without leave to amend.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.    Three Agreements Govern Plaintiff's Participation in YouTube's Partner Program.**

Defendant Google LLC ("Google") operates YouTube, a popular online service for sharing and watching videos and related content.  First Am. Compl. ("AC") ¶ 6, ECF No. 6.  YouTube users who upload videos to YouTube and earn sufficient viewership may be eligible for the YouTube Partner Program ("YPP"), through which participants can earn a share of the revenue from third party advertisements shown in connection with videos they post to the service.[1]  Tr. Ord. at 2; Hawkins Decl. ¶ 4, ECF No. 8-1.[2]  To participate in the YouTube Partner Program, participants must consent to three agreements: the YouTube Terms of Service ("YouTube TOS"), the YouTube Partner Program Terms ("YPP Terms"), and the Google AdSense Online Terms of Service ("AdSense TOS"). Tr. Ord. at 1-2; Hawkins Decl. ¶¶ 3-5.

First, YouTube users who wish to upload videos to YouTube must agree to the YouTube Terms of Service.  AC ¶¶ 6-7 ("Nobody is allowed by Google to have its video creations on YouTube, except ones who signs [*sic*] a contract with Google"); *see also* Tr. Ord. at 2 (citing Hawkins Decl. ¶¶ 2-3; Hawkins Decl. Ex. 1 at 2-3).  Plaintiff alleges that he is a YouTube user

---

[1] A user must meet a variety of criteria to be eligible for the YPP program; most notably, the user must show that the user's "channel" (to which the user uploads videos) has accumulated 1,000 YouTube subscribers and that videos on that channel have accumulated 4,000 total watch hours in the preceding 12 months.  AC ¶ 7.

[2] Google refers to the Declaration of Brian Hawkins and attached exhibits 1-3 filed with the original Motion to Transfer or, in the Alternative, to Dismiss in the Southern District of Mississippi. (ECF Nos. 8-1 through 8-4, respectively).  Plaintiff refers extensively to exhibits 1-3 of the Hawkins Decl. in the AC which form the basis for Plaintiff's breach of contract claim.  *See* AC ¶ 6 ("[n]obody is allowed by Google to have its video creations on YouTube, except ones who signs [*sic*] a contract with Google") (appearing to refer to the YouTube TOS), *id.* ¶ 7 (describing the "contract relationship" between Plaintiff and Google under the YouTube Partner Program) (appearing to refer to the YPP Terms), *id.* ¶ 8 (describing a contract related to AdSense) (appearing to refer to the AdSense TOS).  These documents are therefore incorporated by reference in the AC and the Court may consider them in ruling on this motion.  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *see also Daniels v. Alphabet Inc.*, 2021 U.S. Dist. LEXIS 64385, at *12, 22, 26 (N.D. Cal. Mar. 31, 2021) (judicially noticing YouTube's TOS and YPP Terms under the doctrine of incorporation).

1    named Robert J. Ray "doing business as 'The Organism Chapter 4.'"  AC ¶ 4.  Plaintiff agreed to

2    the YouTube TOS "when he created his YouTube channel in December 2020."  Tr. Ord. at 1,

3    citing AC ¶¶ 6-7.  He alleges that he began posting videos in December 2020 and after about 8

4    months had posted "some 50 videos on YouTube" garnering "over 317,000 views."  AC ¶ 7.

5        Second, prospective YPP participants, who seek to earn revenue from their videos, must

6    agree to be bound by the YouTube Partner Program Terms, a separate agreement which

7    incorporates the YouTube TOS and governs participation in the YPP.  AC ¶ 7 ("details of . . . the

8    contract relationship" can be found at "'support.google.com' under the section entitled 'YouTube

9    Partner Program overview and eligibility-Google.'");  *see also* Tr. Ord. at 2; Hawkins Decl. ¶

10   4.  Section 1 of the YPP Terms describes how YouTube shares advertising revenue with YPP

11   participants: "YouTube will pay [the participant] **55% of net revenues** recognized by YouTube

12   from ads displayed . . . in conjunction with the streaming of [the participant's] Content" and

13   "YouTube will pay [the participant] 55% of the total net revenues recognized by YouTube from

14   subscription fees."  Hawkins Decl. Ex. 2 (emphasis added);  *see also* AC ¶ 7 ("Defendant would

15   compensate Plaintiff" according to the details of the YouTube Partner Program);  *id.*

16   ("compensation was to be exclusively based [on] a percentage of the fees paid"); Tr. Ord. at 2,

17   citing Hawkins Decl. Ex. 2 § 1.  Further, the YPP Terms—the only agreement setting forth how

18   to calculate the amount Google will pay to YPP participants—constitute a fully integrated

19   agreement regarding monetization of Plaintiff's videos that states as follows:  "These Terms

20   replace all previous or current agreements between you and YouTube relating to the YouTube

21   Partner Program, including any prior monetization agreements that are in effect between you and

22   YouTube."  Hawkins Decl. Ex. 2 § 6.  Plaintiff affirmatively alleges he joined the YPP "after about

23   eight months of posting videos" and thus agreed to the YPP Terms.  Tr. Ord. at 2, citing AC ¶ 7.

24       Third, YPP participants must create an AdSense account to receive payment through

25   Google's AdSense program.  That is, participants must accept the AdSense TOS.  Tr. Ord. at 2,

26   citing Hawkins Decl. ¶ 5, Ex. 2 § 2, and Ex. 3 § 1.  Section 5 of the AdSense TOS describes how

27   users "will receive a payment related to the number of valid clicks on Ads displayed on your

28   Properties [*e.g.*, mobile content], the number of valid impressions [*e.g.*, views] of Ads displayed

on your Properties, or other valid events performed in connection with the display of Ads on your Properties," Hawkins Decl. Ex. 3, but the AdSense TOS does *not* provide for payment of a specific fixed dollar amount per view or per Ad. Hawkins Decl. Ex. 3 § 5; *see also* Tr. Ord. at 2. Plaintiff appears to allege he created an AdSense account. AC ¶ 8 ("contract with Defendant through Defendant's 'Adsense' division for placement of advertisements to be embedded in each of Plaintiffs videos"). As a YPP participant, Plaintiff must have had an AdSense account. Hawkins Decl. ¶ 5. Thus, Plaintiff agreed to the AdSense TOS. *Id.*; Tr. Ord. at 2, citing AC ¶ 8.

These three agreements—the YouTube TOS, the YPP Terms, and the AdSense TOS—along with their incorporated guidelines and agreements, govern Plaintiff's earnings from advertisements on his YouTube channel. None of them remotely hints at any sort of per-view payment, let alone an exorbitant amount of $22-per-view (which would exceed the actual payment generated through Plaintiff's videos by many orders of magnitude). Tr. Ord. at 3.

**B.    Plaintiff's Claims Against Google and Procedural Background.**

On January 25, 2023, Plaintiff filed his Complaint against Google North America Inc. in the U.S. District Court for the Southern District of Mississippi. ECF No. 1. On March 13, 2023, Plaintiff filed his Amended Complaint naming as the defendant Google LLC in the same court alleging the same claim for breach of contract. AC ¶ 1. Plaintiff alleges that he had a contract with Google that "provided that Plaintiff would be paid the sum of up to $22.00 per public view . . . occurring during the monetization period." AC ¶ 7. He then alleges that Google breached the agreement by not paying "a per-view amount of $22.00 per view." AC ¶ 8. He does not plead any facts showing where, how, or why YouTube agreed to pay $22-per-view or any other amount other than the 55% of net revenues described in the integrated contract.

Plaintiff also alleges that Google communicated to him an amount of revenue Google owed to him: "Defendant sent Plaintiff an email letter informing him of the dollar amount of his accumulated revenue under the contractual relationship, informing Plaintiff that the amount owed to him was $7.5 Million." AC ¶ 10. Plaintiff does not allege any additional detail—such as the purported sender of the email—regarding this communication, beyond this single sentence. Google has no idea what Plaintiff is referring to.

According to Plaintiff, by virtue of breaching the contract he imagines, Google owes him "$15,000,000.00 at least." AC ¶ 11.  Plaintiff also alleges that by virtue of the alleged breach he has suffered "great mental pain and suffering in the amount of $3,000,000.00," and that "he is entitled to punitive damages, in the amount of $20,000,000.00." *Id*. ¶¶ 12-13.  In total, Plaintiff seeks $38,000,000, and though he is *pro se*, he also requests recovery of attorney's fees. *Id*. ¶¶ 12-14.

On March 27, 2023, Google moved to transfer the case from the Southern District of Mississippi to the Northern District of California pursuant to the forum selection clauses in the YouTube TOS and AdSense TOS which require all claims be brought exclusively in the federal or state courts of Santa Clara County, California.  ECF No. 8.  Google also moved, in the alternative, to dismiss the case for failure to state a claim. *Id*.  Together with Google's motion, Google filed the Hawkins Declaration, which attached the YouTube TOS, the YPP Terms, and the AdSense TOS referenced in and relied on by the First Amended Complaint. *See* ECF Nos. 8-1 through 8-4.

On August 18, 2023, Judge Johnson of the Southern District of Mississippi granted Google's Motion to Transfer and subsequently transferred the case to this Court.  ECF No. 19.  In her order granting Google's Motion to Transfer, Judge Johnson held the YouTube TOS and AdSense TOS binding and enforceable against Plaintiff and enforced the forum selection clauses. Tr. Ord. at 7.  Now that the case is properly before the Court in the Northern District of California, Google again moves to dismiss the action for failure to state a claim.

## ARGUMENT

### I.    LEGAL STANDARD

A complaint should be dismissed under Rule 12(b)(6) when it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Iqbal*, 556 U.S. at 678.  Accordingly, while the Court accepts as true all material allegations in the complaint, it need not accept the truth of conclusory allegations or unwarranted inferences, nor should it accept legal conclusions as true merely because they are cast in the form of factual allegations.  *Id.* at 678-79; *accord Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").

Further, the Court should not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014), quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "[I]n order to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based, a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *see also Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1110 (N.D. Cal. 2003) ("Where a plaintiff fails to attach to the complaint documents referred to in it, and upon which the complaint is premised, a defendant may attach to the motion to dismiss such documents in order to show that they do not support plaintiff's claim.").[3]

## II.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

Under California law, "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 124 (2015), citing *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811,

/ / /

/ / /

---

[3] "[P]ro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).  "'[P]ro se litigants are bound by the rules of procedure,' *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995), which require 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)." *Kelly v. Cubesmart*, 2023 U.S. Dist. LEXIS 107496, at *5 (N.D. Cal. June 21, 2023).

1    821 (2011).[4]  Here, Plaintiff does not allege Google breached an agreement because the YPP

2    Terms—the only agreement between Google and Plaintiff that provides the payment terms under

3    which Google would compensate Plaintiff does not promise any payment on a per-view basis,

4    much less $22 per view, as Plaintiff claims.

5

6    **A.    Plaintiff Cannot Allege Google Breached a Contract Term that Does Not Exist, Much Less One Contrary to the Express Terms of the Agreement.**

7          It is a bedrock principle of California law that there can be no breach of contract if there is

8    no obligation to perform.  *Scott v. Sec. Title Ins. & Guarantee Co.*, 9 Cal. 2d 606, 614 (1937); *cf.*

9    *Murphy v. Hartford Accident & Indem. Co.*, 177 Cal. App. 2d 539, 543 (1960) ("In order for an

10   action to be based upon an instrument in writing, the writing must express the obligation sued

11   upon.").  Here, Google did not breach the alleged contract because Google had no obligation to

12   provide Plaintiff with a fixed dollar amount for each view of Plaintiff's YouTube videos.

13         Plaintiff's First Amended Complaint alleges that after about 8 months of activity on

14   YouTube, he joined the YPP program.  AC ¶ 7.  Therefore, Plaintiff accepted the YouTube TOS,

15   the YPP Terms, and the AdSense TOS.  Tr. Ord. at 1-2; *see* Hawkins Decl. ¶¶ 3-5.  None of these

16   agreements provides that Google will pay Plaintiff $22 per view of his videos, or any other dollar

17   amount.  In fact, two of the agreements do not discuss the payment scheme at all: the language of

18   the YouTube TOS expressly states that it "does not entitle [users] to any payments," Hawkins

19   Decl. Ex. 1 at 10, and the AdSense TOS provide for methods and rights related to payment, but do

20   not specify an amount Google owes to Plaintiff.  Tr. Ord. at 2.

21         The *only* agreement that describes how to calculate payment by Google for participation in

22   the YPP is the YPP Terms.  And the YPP Terms expressly state that "YouTube will pay [Plaintiff]

23   55% of net revenues recognized by YouTube from ads displayed . . . in conjunction with the

24   streaming of your Content" and "55% of the total net revenues recognized by YouTube from

25   _____

26   [4] Under the choice of law provisions in the governing agreements, California law applies to this dispute.  Hawkins Decl. Ex. 1 at 16 (YouTube TOS expressly stating "[a]ll claims arising out of or relating to these terms or the Service will be governed by California law"), Hawkins Decl.

27   Ex. 2 at 1 (YPP Terms incorporating by reference the YouTube TOS and thus its California choice of law provision), Hawkins Decl. Ex. 3 at 6 (AdSense TOS choice of law provision requiring

28   California law to govern disputes arising from its terms).

1    subscription fees." Hawkins Decl. Ex. 2 § 1; *see also* Tr. Ord. at 2.

2        "[F]ew principles of our law are better settled, than that '[t]he language of a contract is to

3    govern its interpretation, if the language is clear and explicit.'" *Carma Devs. (Cal.), Inc. v.*

4    *Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 375 (1992). Here, the language of the YPP Terms is

5    clear: Google will pay Plaintiff 55% of net revenues from advertisements run alongside his videos

6    and 55% of net revenues from YouTube channel subscription fees. Hawkins Decl. Ex. 2, § 1. Any

7    allegation that Google promised payment of a fixed dollar amount per view of Plaintiff's videos is

8    contrary to the plain meaning of the percentage amount tied to revenue earned from advertising in

9    conjunction with Plaintiff's videos. Plaintiff does not offer the Court the slightest reason to depart

10   from the clear, express language of the YPP Terms let alone to invent some windfall payment

11   promise.[5]

12       Because no amendment can change the terms of the governing agreements, Google

13   respectfully requests that the Court dismiss Plaintiff's complaint without leave to amend.

14
     **III.    THE    GOVERNING    AGREEMENTS    AND    ESTABLISHED    LAW**
15          **INDEPENDENTLY BAR PLAINTIFF'S REQUESTED RELIEF**

16       Beyond failing to state a claim for breach of contract, the governing agreements and well-

17   settled law independently preclude Plaintiff's claim because Plaintiff waived his right to bring this

18   action under two different enforceable clauses of the governing agreements. He also cannot

19   recover any non-direct damages as a matter of well settled law in light of the valid and enforceable

20   limitation of liability clauses in the YouTube TOS and AdSense TOS.

21

22

---

23       [5] No contract term requiring payment of $22-per-view can be implied either. It is black letter
     law that "a party can't add to or contradict the terms of a written contract through an implied
24   contract claim." *Allied Trend Int'l, Ltd. v. Parcel Pending, Inc.*, 2019 U.S. Dist. LEXIS 85526, at
     *8 (C.D. Cal. Mar. 25, 2019); *see also Lance Camper Mfg. Corp. v. Republic Indem. Co. of Am.*,
25   44 Cal. App. 4th 194, 203 (1996) ("it is well settled that an action based on an implied-in-fact or
     quasi-contract cannot lie where there exists between the parties a valid express contract covering
26   the same subject matter"). Here, there is complete overlap between the subject matter of the YPP
     Terms and the allegations in the Complaint regarding entitlement to earnings from participation in
27   the YPP. AC ¶ 8. Plaintiff cannot invent a new obligation and allege YouTube breached that
     obligation. Plaintiff especially cannot invent a new obligation where that obligation conflicts with
28   the express terms of the agreement that Plaintiff admits governs this claim. *See* AC ¶ 7.

---

1

2

    **A.    Plaintiff Waived His Right to Bring This Action Under the YouTube and AdSense Agreements.**

3

4

5

    Plaintiff is not entitled to *any* recovery, much less the astronomical sum of $38,000,000 that he seeks (AC ¶ 11-14), because he waived his right to recover under the Limitation on Legal Action clause of the YouTube TOS and the payment dispute clause of the AdSense TOS.

6

7

8

9

10

11

    Under the Limitation on Legal Action clause of the YouTube TOS, Plaintiff waived all claims brought one year after accrual of the cause of action: "YOU AND YOUTUBE AGREE THAT ANY CAUSE OF ACTION ARISING OUT OF OR RELATED TO THE SERVICES **MUST COMMENCE WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES**. OTHERWISE, SUCH CAUSE OF ACTION IS PERMANENTLY BARRED." Hawkins Decl. Ex. 1 at 16 (emphasis added).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    Plaintiff's claim accrued when Google allegedly breached its promise to pay Plaintiff $22 per view of his videos, on or around August 2021 when Plaintiff became eligible for the YouTube Partner Program. AC ¶ 7. But Plaintiff brought suit nearly 17 months later, filing his first Complaint on January 25, 2023. ECF No. 1. As the Supreme Court held in *Order of United Commercial Travelers v. Wolfe*, "a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period." 331 U.S. 586, 608 (1947). And in *Schneider v. YouTube, LLC*, this Court held that the Limitation on Legal Action clause of the YouTube TOS—the very same clause at issue here—was enforceable because "[i]t is reasonable for YouTube to require users to accept a contract that provides it with a 'margin of safety' 'for which it has a legitimate commercial need' because it provides a service to millions of users." 2023 U.S. Dist. LEXIS 1878, at *34 (N.D. Cal. Jan. 5, 2023). On that basis, the Court dismissed Plaintiff's claims that fell outside of the one-year limitations period. *Id.* at *37. This case is no different. Just like the court in *Schneider*, this Court should enforce the one-year limitations period. Since Plaintiff cannot amend his Complaint to overcome this Limitation on Legal Action clause, further amendment would be futile and Google respectfully requests that the Court dismiss Plaintiff's Amended Complaint without leave to amend.

---

Separately, the payment dispute clause set out in Section 6 of the AdSense TOS agreement bars Plaintiff from recovery.  Under that section, Plaintiff agreed to "notify Google within 30 days" of a disputed non-payment and states that "[if] you do not, any claim related to the disputed payment . . . is waived."  Hawkins Decl. Ex. 3.  Plaintiff appears to allege that by August 2021—roughly 8 months after Plaintiff joined YouTube in December 2020—Google owed Plaintiff up to $22 per-view.  AC ¶ 7.  Plaintiff does not allege that he notified Google within 30 days (by September 2021) of the non-payments he disputes.  Thus, Section 6 remains an independent bar to Plaintiff's claims.  This Court enforced a previous version of this same provision of the AdSense TOS in *Free Range Content, Inc. v. Google Inc.*, 2016 U.S. Dist. LEXIS 64365, at *39 (N.D. Cal. May 13, 2016).  There, the AdSense Terms of Service similarly provided 30 days to notify Google in writing of any payment dispute and stated that, "if you do not, any claim relating to the disputed payment is waived."  *Id.* at *33.  The Court enforced the provision, finding reasonable the 30-day time period to notify Google and dismissed all claims that plaintiffs failed to submit to Google within the 30-day time period as provided by the agreement.  *Id.* at *39-40.  The same result is warranted here.  *Cf. Feldman v. Google Inc.*, 513 F. Supp. 2d 229, 243 (E.D. Pa. 2007) (upholding and enforcing claim period in Google's AdWords Agreement).

**B.      Established Law Does Not Entitle Plaintiff to Recover Punitive Damages, Damages for Pain and Suffering, or Attorney's Fees.**

In addition to $15,000,000 in compensatory damages, Plaintiff also prays for $3,000,000 in consequential damages (pain and suffering), $20,000,000 in punitive damages, and attorney's fees.  AC ¶¶ 11-14; *see also* Prayer for Relief, AC at 5, ¶¶ A-C.  As a matter of law, he is entitled to none of this.  It is a fundamental principle of contract law that "no one shall profit more from the breach of an obligation than from its full performance." *Patent Scaffolding Co. v. William Simpson Constr. Co.*, 256 Cal. App. 2d 506, 511 (1967).  As a result, recovery for punitive damages, damages for pain and suffering, and attorney's fees are generally not available for breach of contract.  *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 20 F.4th 1231, 1247 (9th Cir. 2021) ("[A] party cannot collect punitive damages for breach of contract awards."); *Erlich v. Menezes*, 21 Cal. 4th 543, 558 (1999) (finding damages for mental suffering and emotional distress not available in

ordinary commercial contract actions); *Gray v. Don Miller & Assocs., Inc.*, 35 Cal. 3d 498, 504 (1984) (finding attorney's fees not recoverable for contract claims "unless a statute or the agreement of the parties provides otherwise.").

Plaintiff's request for attorney's fees also fails because, as a *pro se* plaintiff, he is not represented by an attorney to whom he owes any fees. *Kay v. Ehrler*, 499 U.S. 432, 435, 437 (1991) (attorney's fees are not available for plaintiffs proceeding *pro se*).  Under Plaintiff's breach of contract theory, he does not—and cannot, as a matter of law—allege entitlement to attorney's fees, or to punitive damages or damages for pain and suffering, and Plaintiff's damages requests must be dismissed.[6]

## CONCLUSION

For the reasons set forth above, Google respectfully requests that the Court dismiss the Amended Complaint without leave to amend because Plaintiff failed to plead facts sufficient to state a claim for breach of contract and because further amendment would be futile.

Respectfully submitted,

Dated:  October 4, 2023

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Matthew R. Reed*
　　Matthew R. Reed

*Attorneys for Defendant*
*Google LLC*

---

[6]  While the Court need go no further, Plaintiff's request for punitive damages and consequential damages is foreclosed by the YouTube TOS, which has a Limitation of Liability clause that provides: "YOUTUBE . . . WILL NOT BE RESPONSIBLE FOR ANY LOSS OF PROFITS, REVENUES, BUSINESS OPPORTUNITIES, GOODWILL, OR ANTICIPATED SAVINGS; LOSS OR CORRUPTION OF DATA; INDIRECT OR CONSEQUENTIAL LOSS; PUNITIVE DAMAGES CAUSED BY . . . ANY CONTENT WHETHER SUBMITTED BY A USER OR YOUTUBE, INCLUDING YOUR USE OF CONTENT." Hawkins Decl. Ex. 1 at 13-14.  The AdSense TOS has a similar provision.  Hawkins Decl. Ex. 3 § 14.  These clauses are enforceable. *See Darnaa, LLC v. Google Inc.*, 236 F. Supp. 3d 1116, 1125 (N.D. Cal. 2017), *aff'd*, 756 F. App'x 674 (9th Cir. 2018).