IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
San Francisco Division

| | |
|---|---|
| Robert J. Ray, | PLAINTIFF |
| VS. | CIVIL ACTION NO. 3:23-CV-04222-TSH |
| Google, LLC  d/b/a  YouTube, | DEFENDANT |

<u>**Response to Motion to Dismiss and Memorandum in Opposition to Dismissal**</u>

Comes now, Robert J. Ray and files his **<u>Response to Motion to Dismiss</u>** and **<u>Memorandum in Opposition to Dismissal</u>** and shows in support the following:

<u>**Response to Motion to Dismiss**</u>

I.   **In General**

The first relationship of Ray with Google and its YouTube required "monetization" by Ray by gaining 1,000 "subscribers" to his channel, i.e. people connecting themselves as "friends" and such, meaning each was tied to Ray's channel and 4,000 watch hours. At that inception, Google promised to Ray that, after monetization, he would be paid " up to $22.00" per view.  This promise, as it was intended, induced Ray to place his most attractive, original material on his channel to speed along the monetization process.

Ray achieved monetization, but never was paid except $118.02 and despite Google's promise to put his revenue into his bank account between the 21st and 26th monthly, only that $118.02 was sent during the past 34 months. His channel continues in operation by Google. Shortly after monetization, Google then imposed on him further requirements, as alleged in his Amended Complaint. (*Doc. # 6 )* Ray had to agree to them because he had no other choice-- Google had his creations and it continues to possess them to this date. Google admits this at pages 3 and 4 of its Motion where it says that Ray had to agree to all three contracts.

Ray cannot find the Google promise of " up to $22.00" per view, but, it is within the bosom of Google and its Motion should be denied and discovery allowed.

It is quite percussive that in previous communications, especially those in which

revenue was projected, that Google would have stated a simple formula for revenue. That simple formula was payment to the creator of a dollar amount per view which did change in later comminations going " up to $29.00 per view". When Google was starving for content, i.e. the original creations of the minds of fellow human beings worldwide, that's a technique Google needed to use. This would get solicited creators to submit to Google via their channels, the best creations they had ever made--the best of the imaginative minds of the entire human race. It is suggested without reservation this need for the human mind was motivated for the nurture of Artificial Intelligence that was in the womb of Google.

Ray was never informed of, nor agreed to, the "complexity" of how Google calculated his earnings. See more on that down below.

## II. Factual account of Ray's relationship with Google and YouTube:

Robert J Ray - Organism Chapter 4 - YouTube Channel Complaint Summary - March 2022 - CS-22-00912

I first became involved with YouTube in December 2020 when I began uploading my Professional Development Process videos on the YouTube Channel with the goal to become a YouTube Partner and having my channel monetized to earn income. After eight months of uploading my videos according to YouTube my channel achieved the goal of getting 1000 subscribers and 4000 watch hours. Now I was told by YouTube I would be getting paid " up to $22.00" per video view to start and in addition to ad revenue which was estimated on my dashboard and updated daily. I viewed the dashboard regularly.

At this time I also signed up with the YouTube official and verified marketing partner Social Blade which was given complete access to my YouTube account for Analytics and advice on earning more ad revenue. In addition to YouTube they were sending regular emails regarding my earnings to be paid into my checking account the 21-26th of each month by YouTube's official payment company AdSense. Based on all this information received from YouTube and Social Blade about expected earnings I invested over $2000 in the production of my videos and promotion.

YouTube has not honored their agreement by paying me any money for my views which numbered 296,000 at the time I was monetized. As of mid March the channel officially totaled 316,987 views.

I received an email from Google AdSense on 12/21/21 with the following "We sent a payment for your AdSense pub-3354396744834743 earnings on Dec 21, 2021." My YouTube dashboard showed $118.02 which was then deposited into my Citizens National Bank Account by AdSense. At this time I was told I had reached my threshold payment for monetization and in the following month would receive my YouTube earned income. For Google to have had his accurate bank deposit information and then claim, when it came to sending him by deposit the large sums of his earnings, Google somehow "mis-sent" that amount to some person with an account, it says, in Kansas City.(see down below.)

Among many other emails sent by YouTube, on 1/4/22 I was sent a graph claiming $400,446.63 estimated earnings and showing a 152% increase in ad revenue.

After many attempts to discuss this matter, YouTube continually deflected me to different tech people, with complex and confusing emails and hours of conversation with one employee via chat to be passed on to another and the issues never being resolved. YouTube would neither confirm nor deny the funds of $7.5M that CEO Susan Wojcicki letter said I had earned nor any of the other funds claimed in the emails received from YouTube and their partner Social Blade.

In January, 2022, I received an email from YouTube stating that 2.5 million dollars wired to my Citizens National Bank account had been denied and they asked me to contact my bank to resolve the issue. I went to the bank and was told they never received the funds to be denied. At this point YouTube/Social Blade emails said they tried to send the funds to another Robert Ray at a Citizens bank in Missouri who had a YouTube channel and it had been accepted

"The following was sent me by YouTube Corporation <group3revenue@gmail.com>
"So sorry to hear that. Mr. Ray but your money has already been deposit at Citizens bank at 7553 NW Barry Rd, Kansas City, MO  64153 United States"
"Sorry but the money that was deposit in 7553 NW Barry Rd Kansas City, MO  64153 United States has already been approved and used. If you have any questions please Feel free to contact

-3-

me. HAVE a great day!!"

I called the bank in Kansas City to inquire where my funds were and was told it had never been deposited. Yet when asked via email again about the funds I received the explanation:

"Regarding your concern Mr. Ray I have look into this issue and found that the money that was pending to be sent at 7553 NW Barry Rd Kansas City, MO 64153 United States was declined and sent back to us due to the misinformation that was given to us and will be on hold until the next threshold is reached which is 2-26-22. HAVE A GREAT DAY!!"

**III. Google Admission of Authenticity of CEO Wojkieski and Substantial Revenue due Ray.**

Such is shown by the following communications from Google to Ray that occurred after Ray complained in December 2021 as to where the $7.5 million was that CEO Susan Wojcicki had informed him was due him and Google admitted to Ray the legitimacy of the earnings information that had sent him :

(A) yt-partner-support <yt-partner-support@google.com> "Robert J Ray our team has did **a deep dive into your channel** and **found that the two letters that was sent to us was found legitimate on our end. Our team still doing a investigation on were these funds are**. Thanks for you patience and service we will reach out after 15 days on this matter. Have a great day!"

(B)     From: <yt-partner-support@google.com>

Date: Tue, **Jan 25, 2022** at 7:03 AM

Subject: YouTube Support [3-3731000031539]

To: <robertray.author@gmail.com>

Hi there,

Thank you for you response.

Robert J Ray your bank has declined **2.5 million dollars revenue** which was supposed to be deposit on **1/22/22** please contact your bank to fix this issue. HAVE A GREAT DAY!!

I'll look forward to hearing from you.

All the best,

Bo

Google YouTube Team

(C)  From: yt-partner-support <yt-partner-support@google.com> "Robert J Ray, regarding your complaint **we have updated you revenue funds in google AdSense which can now be seen *we will update the rest soon.*** You also no longer have to reach another threshold because we found this problem on our end. You can expect these funds on 3/30/22. You will also have to confirm your bank once again."

(Ray then looked at this AdSense account on his channel and it showed $2.5 Million.)

(D) After the Google investigation , it sent the following communication to him, which in part reads, :

From: Google AdSense <rayrobert488@gmail.com>

Date: Sun, **Mar 27, 2022** at 6:03 PM

Subject: About Your Revenue Payment

To: <Robertray.author@gmail.com>

        About Your Revenue Payment

Starting in March and rolling out over the next few months, you will have a new way to view your YouTube earnings. 10,758,000 will be sent to you 4/26/2022.

**IV.**  (A) Ray states that because Google charges advertisers only s minuscule amount for ads on each channel, that the above dollar amount , the $7,5 million of the November 2021 letter from the CEO and the revenue correction amounts after the February - March, 2022 Google investigation can only be derived from at least the multiplication of the number of views by a dollar figure such as " up to $22.00".

    (B)  The March 27, 2022 email makes a distinction between YouTube earnings

and Adsense revenue. YouTube is paid per view while ad money is a result of Google's minuscule charge for each ad on each of its multitudinous channels of all its creators and multiplied by 55%. Ray is paid both YouTube earnings and advertising earnings.

(C) As for the following below listed top ten earners of Google, since Google could pay them, then why wasn't Ray paid.

The following list is according to Forbes: 2021, sources: Captiv8, Social Blade and Polstar

Mr Beast - 49M

Jake Paul - 45M

Markiplier - 38M

Rhett and Link - 30M

Unspeakable - 28.5M

Nastya - 28M

Ryan Kaji - 27M

Dude Perfect - 20M

Logan Paul - 18M

Present Archment - 16M

## V. Statute of limitations.

Ray gave timely notice immediately after Google notified him on November 25, 2021, that the money transfer had been sent to his account and he saw it wasn't there. As required under the contract Google began its "in house" investigation and by February 5, 2022, Youtube was still continuing its investigation. See p. 9 of "C" to his Mississippi filing, it using the words of admission: "I appreciate your patience and cooperation." That February 5, 2022 admission of on-going investigation referred to a "Youtube Analytics Report" for January, That Report dated January 4, 2022.

No doubt when Ray filed his lawsuit on January 25, 2023. he met the statute of limitations

## VI. Complexity of calculating Revenue.

Ray, only during Google's internal investigation beginning about January, 2022

-6-

and continuing until late March, 2022, learned of the "complexity", as shown next below of deriving at what Google says are "invalid views". He never knew of the weakness of the channel viewing that Google presented him with when it came to Google paying what it had said he had earned. :

(A)   From Google on February 5, 2022 from "vt-partner-support@googler.com"

Hi there,

Thank you for you response.

I appreciate your patience and cooperation. I've consulted our internal team about your issue and we didn't see any issue about your channel. Please note that advertising revenue is based on a number of different factors and may not be directly related to video views. I know how concerning it is for you to see your estimated revenue in your YouTube Analytics not increasing. Here's what we've found.

---------------------

Just to enlighten you about it, estimated monetized playbacks are the number of times your video was watched with ads. Advertising revenue is based on a number of different factors and may not be directly correlated to video views, and not all views are equal in terms of revenue. These factors include advertiser bidding, advertising availability, and advertiser demand for your videos.

Many factors can affect the amount that is paid to you. What you see in your YouTube Analytics Revenue Report is just an estimated amount of your finalized earnings. We may make adjustments to your estimated or finalized earnings to account for invalid impressions or clicks, which means that we may remove earnings from your payable balance.

Also, advertising is seasonal. For example during the holiday season some creators may see an uptick in revenue due to increased investment in advertising; early in the year tend to be lighter months. We've also noticed that when times are lean, businesses cut their marketing budgets.

Revenue also depends on the ad formats that run on your videos. Different formats have different CPMs, which you can think of as a price. Because advertisers pay different prices for different ads, you'll earn different amounts depending on which ads run on your videos.

Your total revenue depends on several things, including which ad format appears, what the advertiser paid, and the amount of times your video was viewed.

In addition, a viewer's geographic location will impact your revenue.

Also, when we did a deep dive on your channel, we've seen that your entire channel experienced **a high volume of invalid ad traffic** ever since your channel started monetizing and that was filtered out up to 3rd February that is why you're seeing a discrepancy in your YouTube Analytics. Here is an advanced mode of your channel's YouTube Analytics report of your views from October 1, 2021 to February 4, 2022.

---------------------

All the best,
Bo
Google YouTube Team
Google | YouTube Team | www.youtube.com

  (B) Ray states that he denied indulging in any invalid traffic, but Google, nevertheless, without offering any proof of *any* invalid traffic took away 200,000 of his views.

  **VII. Number of Views Payable at** " up to $22.00" **each is a Fact.**

  Ray states under oath this formula of "up to $22.00" is a fact and the reason he entered into any contract with Google.

## Memorandum in Opposition to Dismissal

**VIII. There is a contract duty to pay the Creator per each view of his channel.**

Exhibit "C", page 9 the February 5, 2022 letter to Ray from Google, itself admits the duty to pay Ray per view and also per advertisement:

"Just to enlighten you about it, estimated **monetized playbacks are the number of times your video was watched with ads. Advertising revenue is based on a number of different factors and may not be directly correlated to video views**, and not all views are equal in terms of revenue. These factors include advertiser bidding, advertising availability, and advertiser demand for your videos.' "

Ray states that it is illogical for him to be concerned about analytics over a mere $400,446.63 in *ad money* and certainly not $3,550.23( Exhibit "C", pp 4-5) , when he's been congratulated by the Google CEO Susan Wojcicki on earning $7,500,000.00, **in Youtube revenue view money,** which she said would be deposited on November 25, 2021, into his checking account. "C" at p. 3.

Upon pursuing its in house investigation, Google in February and March, 2022, admitted it was incorrect when it rejected the Wojcicki letter and that Ray was entitled and was being paid(the $2.5 million) and had earned another over $10 million.

**IX. Contract of Adhesion-- Absence of " up to $22.00" in the Contract documents.**

Ray, first signed the YPP contract, after he had been told he would be paid " up to $22.00" per view of his channel and, no doubt all its terms were standardized language as were the other two "contracts" Google in its Motion have identified.   Google then in January through March, during its investigation, has admitted that it owes Ray several million dollars and it has not paid same though it promised Ray these funds would be deposited in his bank account. Regardless of the absence of the $22.00 payment term in the supposed contract documents, Ray is owed the earnings that Google identified after its investigation.   They have not been paid.

With discovery, Google would be required to produce the underlying earnings formula that produced those substantial earnings due and unpaid from Google.

The Contracts are clearly tainted by "unconscionability", i.e. fatally suffer from "adhesion".

**Flores v. Transamerica Homefirst, Inc.,** 93 Cal. App. 4th 846, 853 (2001). Although both procedural and substantive unconscionability must be present, they need not be present in the same degree; instead, "[c]ourts apply a sliding scale: the more substantively oppressive the contractual term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." **Davis v. O'Melveny & Myers**, 485 F.3d 1066, 1072 (9th Cir. 2007) (citation omitted).

Google repeatedly sent apparently repeated "modification" of the contracts to Ray and discovery would allow a full revelation to this Court of what transpired.

Finally Ray would suggest that the "Top Earners", published by Google, to simulate more contributions to its vaults of human original thought, could not have earned those amounts through the mere 55% of net advertising revenue. Discovery to reveal the underlying formulas for the derivation of those very substantial amounts would prove the validity of Ray's claim here.

## X.  Statute of Limitations.

Ray gave timely notice immediately after Google notified him on November 25, 2021, that the money transfer had been sent to his account and he saw it wasn't there. As required under the contract Google began its "in house" investigation and by February 5, 2022, Youtube was still continuing its investigation. See p. 9 of Exhibit "C" to his Mississippi filing, it using the words of admission: "I appreciate your patience and cooperation." On January 25, 2023, Ray filed his Complaint thus he complied with both the "in house" investigation duty and the one-year statute of limitations imposed by the Agreements.

The allegations of the Amended Complaint sought recovery of all amounts owed him, including the most recently notice of $7.5 million and those amounts Google informed him of after its January-March 2021 investigation.

Regardless of any so called late court filing amounts, this action should continue as to the

substantial amounts clearly within both the "limitation" periods stated in the Contract.

Discovery will allow a clear picture of Google's calculation of those amounts and justice requires that the action be allowed to move to the discovery phase.

**XI. Alternative Contention: Fraud in the Inducement.**

In that Google has now advanced dismissal from failure of Ray to produce a document containing a Google promise to pay " up to $22.00" per view of his channel If Google prevails on the absence of the $22.00 from the Contract documents, then , he requests opportunity to amend to allege a claim of fraudulent inducement. Ray has already described the minuscule revenue that would have been generated to him by mere 55% of net advertiser fees associated with his channel, therefore, he request amendment.

The Court in **Robinson Helicopter Co., Inc. v. Dana Corp.** (2004) 34 Cal.4th 979, 22 Cal.Rptr.3d 352, 102 P.3d 268 ..." discussed instances where tort damages are permitted in contract cases. " 'tort damages have been permitted in contract cases where a breach of duty directly causes physical injury [citation]; for breach of the covenant of good faith and fair dealing in insurance contracts [citation]; for wrongful discharge in violation of fundamental public policy [citation]; or where the contract was fraudulently induced. [Citation.]' [Citations omitted] The Court, at 300 Cal.Rptr.3d 723 explained "[I]n each of these cases, the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm.' " ( Robinson , supra , 34 Cal.4th at pp. 989-990, 22 Cal.Rptr.3d 352, 102 P.3d 268.)

In **Dhital v. Nissan North America, Inc.**, 84 Cal.App.5th 828, 300 Cal.Rptr.3d 715 (Cal. App. 2022) , the misrepresentation was a known defective transmission and the Court re-iterated the elements of this tort in California law. "The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage. [Citations. omitted]

If proven, it makes the contract "voidable". **Dhital** citing **Hinesley v. Oakshade Town Center** (2005) 135 Cal.App.4th 289, 294-295, 37 Cal.Rptr.3d 364 ; accord, **Geraghty v. Shalizi**

(2017) 8 Cal.App.5th 593, 597, 215 Cal.Rptr.3d 61.)

### Conclusion

The contracts are "unconscionable" and should not for failure of inclusion of the "up to $22.00" per view to authorize dismissal. Ray never consented to the "complexity" of calculating his earnings under the Adsense advertising formula. He never allowed or expedited any "invalid" views. There is no doubt that Ray complied with the statute of limitations provisions, both the "in house" notice and investigation and a court filing within one year of the completion of that investigation. The motion to dismiss should be denied and Google be subjected to the usual discovery period. Justice will be served by this disposition of the Motion.

RESPECTFULLY SUBMITTED,

*Robert J. Ray*

Robert J. Ray, Plaintiff, pro se
20125 Mosby Road, Apartment F-4
Meridian, Mississippi 39307
Telephone 602-604-5443
email: robertray601@comcast.net

Dated: 23rd day of October, 2023..

### VERIFICATION

COUNTY OF LAUDERDALE, STATE OF MISSISSIPPI

After being first put upon my oath or affirmation, I, **Robert J. Ray**, do hereby depose and state that the facts, matters and circumstances set forth in the above **Response to Motion to Dismiss** and **Memorandum in Opposition to Dismissal** are true and correct.

This 23rd day of October, 2023..

*Robert J. Ray*
_____
**Robert J. Ray**

Sworn to and subscribed before me by Robert J. Ray on this the 23rd day of October, 2023.

[Notary seal: STATE OF MISSISSIPPI, NOTARY PUBLIC, ID # 107188, TRACY N. BOLLING, Commission Expires Nov. 6, 2025, LAUDERDALE COUNTY]

MY COMMISSION EXPIRES:
11/06/2025

_Tracy N. Bolling_
NOTARY PUBLIC

Certificate of Service

I, Robert J. Ray, pro se, hereby certify that I have this date served a true copy of the **Response to Motion to Dismiss** and **Memorandum in Opposition to Dismissal** by electronic and first class U. S. Postal Service transmitted and addressed to the following
Matthew R. Reed.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304-1050
direct: 650.565.3990
mobile: 650.279.8126
email: mreed@wsgr.com

Laura N Hernandez
Wilson Sonsini Goodrich & Rosati
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
415-947-2011
Email: lhernandez@wsgr.com

Done this the 23rd day of October , 2023.

Robert J. Ray

[Notary Seal: STATE OF MISSISSIPPI, NOTARY PUBLIC, ID # 107188, TRACY N. BOLLING, Commission Expires Nov. 6, 2025, LAUDERDALE COUNTY]