MATTHEW R. REED, State Bar No. 196305
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile:  (866) 974-7329
Email: mreed@wsgr.com

LAURA N. HERNANDEZ, State Bar No. 344641
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA  94105-1126
Telephone: (415) 947-2000
Facsimile:  (866) 974-7329
Email: lhernandez@wsgr.com

*Attorneys for Defendant*
GOOGLE LLC d/b/a YOUTUBE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT J. RAY,<br><br>        Plaintiff,<br><br>    v.<br><br>GOOGLE, LLC d/b/a YouTube,<br><br>        Defendant. | CASE NO.:  3:23-cv-04222-TSH<br><br>**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Judge: Honorable Thomas S. Hixson<br>Courtroom: E, 15th floor<br>Hearing Date: November 9, 2023<br>Time: 10:00 a.m. |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 2

I.    PLAINTIFF STILL FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT ................................................................................................................... 2

    A.    YouTube Does Not Owe Plaintiff a "Contract Duty" to Pay Him on a Per-View Basis. ............................................................................................... 2

    B.    Courts Regularly Enforce Contracts of Adhesion. .................................... 5

II.    PLAINTIFF FAILS TO ASSERT THAT GOOGLE PROMISED HIM PAYMENT IN OTHER EMAIL COMMUNICATIONS .................................................. 6

III.    PLAINTIFF'S CLAIMS ARE TIME-BARRED UNDER THE GOVERNING AGREEMENTS ................................................................................................. 8

    A.    The One-Year Limitations Period in the YouTube TOS Applies and Bars Plaintiff's Claim. ............................................................................................ 8

    B.    The Thirty-Day Dispute Period in the AdSense TOS Applies and Bars Plaintiff's Claim. ............................................................................................ 9

IV.    GRANTING PLAINTIFF LEAVE TO AMEND HIS BREACH OF CONTRACT CLAIM OR TO ADD A CLAIM FOR FRAUD IN THE INDUCEMENT WOULD BE FUTILE ....................................................................................................................... 9

CONCLUSION ............................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Coto Settlement v. Eisenberg*,
    593 F.3d 1031 (9th Cir. 2010) .................................................................................................. 3, 4

*Darnaa, LLC v. Google, Inc.*,
    2015 U.S. Dist. LEXIS 161791 (N.D. Cal. Dec. 2, 2015) ............................................. 5, 8

*Dhital v. Nissan N. Am., Inc.*,
    84 Cal. App. 5th 828 (2022) ....................................................................................................... 9

*Ehab Ahmed v. Wormuth*,
    2023 U.S. Dist. LEXIS 33430 (N.D. Cal. Feb. 28, 2023) ........................................................ 8

*Free Range Content, Inc. v. Google Inc.*,
    2016 U.S. Dist. LEXIS 64365 (N.D. Cal. May 13, 2016) ....................................................... 9

*Gerritsen v. Warner Bros. Entm't Inc.*,
    112 F. Supp. 3d 1011 (C.D. Cal. 2015) ................................................................................... 3

*Lewis v. YouTube, LLC*,
    244 Cal. App. 4th 118 (2015) .................................................................................................... 5

*Peak v. TigerGraph, Inc.*,
    2021 U.S. Dist. LEXIS 236984 (N.D. Cal. Dec. 10, 2021) .................................................... 3

*Schneider v. YouTube, LLC*,
    2023 U.S. Dist. LEXIS 1878 (N.D. Cal. Jan. 5, 2023) ..................................................... 5, 8

### RULES

Fed. R. Evid. 201(b)(1) ........................................................................................................... 3, 4

Fed. R. Evid. 201(b)(2) ........................................................................................................... 3, 4

# INTRODUCTION

In response to the numerous independent grounds for dismissal of this case, Plaintiff offers little more than inscrutable rhetoric, improperly incorporated documents of questionable authenticity, and minimal references to the law. That is not enough for this case to proceed. Plaintiff's breach of contract claim fails as a matter of law.

First, Plaintiff does not dispute that the YouTube Partner Program Terms, YouTube Terms of Service, and AdSense Online Terms of Service completely govern his relationship with Defendant Google LLC ("Google"). The YouTube Partner Program Terms expressly provide that Plaintiff is entitled to 55% of net revenues, if any, from advertisements displayed alongside Plaintiff's videos, *not* $22.00 per video view as Plaintiff alleges. Plaintiff attempts to refute this by pointing to an unauthenticated document where Google purportedly promised to calculate payment on a per view basis. Not so: the unauthenticated document, which should not be relied on, does not communicate that Google calculates payment on a per-view basis. Plaintiff also appears to argue that the governing agreements should not be enforced because they are invalid contracts of adhesion. Plaintiff's argument alone is not enough to invalidate a contract, and Plaintiff comes nowhere close to establishing that position.

Second, Plaintiff asserts that Google made several other promises to pay Plaintiff fixed sums in email communications. Those communications, most of which are not alleged in the First Amended Complaint, are not properly incorporated or authenticated, and should not be considered.

Third, even by Plaintiff's calculation, he waived his right to bring this claim under the Limitation of Legal Action Clause in the YouTube Terms of Service and the payment dispute clause of the AdSense Online Terms of Service.

Fourth, Plaintiff's request to amend his Complaint to add a claim for fraudulent inducement should be denied as futile. Google made no misrepresentation, much less knowingly, regarding the payment calculation method Plaintiff challenges.

For these reasons and those set forth in Google's Motion to Dismiss and accompanying submissions, Google respectfully requests that the Court dismiss the First Amended Complaint without leave to amend.

# ARGUMENT

## I. PLAINTIFF STILL FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

Plaintiff admits he signed the YouTube Partner Program Terms ("YPP Terms") and does not dispute that he agreed to the other governing terms—the YouTube Terms of Service ("YouTube TOS") and the AdSense Online Terms of Service ("AdSense TOS"). Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Opp.") at 9, ECF No. 33. Plaintiff also does not dispute that the YPP Terms expressly provide for payment under the YouTube Partner Program: "55% of net revenues recognized by YouTube from ads displayed . . . in conjunction with the streaming of your Content." Def.'s Motion to Dismiss ("Mot.") at 12, ECF No. 30, quoting Hawkins Decl. Ex. 2 § 1, ECF No. 8-3. As Google explained in its Motion, Plaintiff's allegation that Google promised Plaintiff $22.00 per view of his videos, or any other per-view payment arrangement, is contrary to the clear and explicit meaning of the YPP Terms governing payment under the program, which this Court should enforce. Mot. at 12-13. That should end Plaintiff's frivolous claim to a massive windfall.

In his Opposition, Plaintiff does not proffer any viable reason to depart from the express language of the YPP Terms. He provides no evidence of an agreement where Google promised to pay him $22.00 per view, as he alleged. He even admits he "cannot find the Google promise [to pay] 'up to $22.00' per view." Opp. at 1. Instead, Plaintiff appears to advance two primary arguments: that Google has a "contract duty to pay the Creator per each view of his channel" pursuant to a document dated February 5, 2022, and that the governing agreements are invalid contracts of adhesion. Opp. at 9-10. Neither argument saves his claim. The 2022 document—to which Google objects as not properly before the Court—contains no promise to pay at all, much less on a per-view basis. And even if the governing agreements are adhesive in nature, that alone does not make them unconscionable. In fact, courts have routinely enforced these very agreements.

### A. YouTube Does Not Owe Plaintiff a "Contract Duty" to Pay Him on a Per-View Basis.

Plaintiff argues that Google had "a contract duty" to provide payment on a per-view basis by supplying a snippet of text from a 2022 document of unknown provenance, that Plaintiff contends is correspondence from Google. Opp. at 9 (citing to Exhibit C of Plaintiff's Response to

1  Motion to Transfer or Dismiss, at 10, ECF No. 11-3). The text Plaintiff provides states that
2  "estimated **monetized playbacks are the number of times your video was watched with ads.**
3  **Advertising revenue is based on a number of different factors and may not be directly**
4  **correlated to video views**." Opp. at 9. On its face, this text does nothing to support Plaintiff's
5  claim and in fact contradicts his assertion that Google promised to pay him each time his video
6  was viewed.

7  Furthermore, YouTube challenges this 2022 document (and all other documents) on which
8  Plaintiff relies because it has not been properly submitted and is of unknown origin. "Courts
9  regularly decline to consider declarations and exhibits submitted in support of or in opposition to
10 a motion to dismiss . . . if they constitute evidence not referenced in the complaint or not a proper
11 subject of judicial notice." *Peak v. TigerGraph, Inc.*, 2021 U.S. Dist. LEXIS 236984, at *7-8 (N.D.
12 Cal. Dec. 10, 2021), quoting *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1021
13 (C.D. Cal. 2015). In taking judicial notice, courts may consider material "not subject to reasonable
14 dispute," meaning the material is "generally known," or "can be accurately and readily determined
15 from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2).
16 Under the incorporation by reference doctrine, courts may consider material "in situations where
17 the complaint necessarily relies upon a document or the contents of the document are alleged in a
18 complaint, the document's authenticity is not in question and there are no disputed issues as to the
19 document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

20 Plaintiff offers no basis for why the Court should consider this 2022 document or any of
21 the other documents submitted by Plaintiff. For example, Plaintiff does not (and cannot) explain
22 how documents purporting to be private communications between two parties are "generally
23 known" or can be accurately determined from credible sources, as required for judicial notice. Nor
24 does he (or can he) explain how the correspondence supports his $22.00 per-view claim as required
25 for incorporation by reference. No document sets forth a promise of $22.00 per view, and only one

1  undated document—addressed below—even relates to any allegation in the First Amended
2  Complaint.[1]

3  Courts cannot consider material as a matter of judicial notice or incorporation by reference
4  if the material is subject to dispute. Fed. R. Evid. 201(b)(2) (judicial notice); *Eisenberg*, 593 F.3d
5  at 1038 (incorporation by reference). As Google explained in its Reply Memorandum of Law in
6  Support of Google's Motion to Transfer or Dismiss (ECF No. 14), Plaintiff provides no means of
7  authenticating any of the documents, especially those in his Exhibit C. *Id*. at 13-14. While Plaintiff
8  included an affidavit with his Response to Google's Motion to Transfer or Dismiss, he did not
9  attest in that affidavit that he has personal knowledge of the accuracy of the documents, or that
10 they are public records or otherwise qualify for authentication. Aff. in Supp. of Resp. to Mot. to
11 Transfer or Dismiss, ECF No. 13. In fact, many of the documents he describes in his affidavit as
12 "**Exhibit 'C'** Various emails transmitted by Google to Ray" are not actually from Google. *Id*. at
13 1. For the specific 2022 document at issue here—Exhibit C (*see* ECF No. 11-3) at 10—Plaintiff
14 provides no explanation for its origins. Nor is the document "generally known" or ascertainable
15 through accurate sources. Fed. R. Evid. 201(b)(1). Accordingly, the Court cannot consider it.[2]

16 Even if the 2022 document were properly incorporated and authenticated (it is not), the
17 AdSense TOS controls disputes related to payment calculation—the text of the purported
18 communication does not. The AdSense TOS provides: "[p]ayments will be calculated solely based
19 on Google's own accounting." Hawkins Decl. Ex. 3 at 3, ECF No. 8-4. In other words, the AdSense
20 TOS does not obligate Google to calculate payment on a per-view basis as now alleged by Plaintiff.
21 Since the AdSense TOS is a fully integrated contract, *see id.* at 5, it controls here. The AdSense
22 TOS supersedes Plaintiff's quoted text, which text cannot constitute a contractual obligation.

---

[1] As discussed in more detail in Section II *infra,* the single undated document referenced in the Amended Complaint and attached as page 4 of Exhibit C in Support of Plaintiff's Response to Motion to Transfer or Dismiss—a purported message from YouTube's CEO—should not be considered by the Court due to its questionable authenticity.

[2] Section II, *infra* discusses the specific shortcomings of the other documents cited in Plaintiff's Opposition.

Finally, even if the document were relevant and properly before the Court, it does not support Plaintiff's claim that Google must calculate payment on a per-view basis. To the contrary, the document explicitly states that "total revenue depends on several things, including [but not limited to] which ad format appears, what the advertiser paid, and the amount of times your video was viewed." Pl.'s Resp. to Mot. to Transfer or Dismiss, Ex. C at 10, ECF No. 11-3. That is, even if spun as Plaintiff would spin it, the document does not support Plaintiff's contention that Google must pay him solely on the number of views his videos garnered, much less $22.00 for each such view. It is of no help to Plaintiff's case or to his failed effort to state a claim.

### B. Courts Regularly Enforce Contracts of Adhesion.

Plaintiff also appears to argue that the governing agreements are unconscionable and cannot be enforced because they are contracts of adhesion. *See* Opp. at 9-10. "A finding of unconscionability requires 'a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.'" *Darnaa, LLC v. Google, Inc.*, 2015 U.S. Dist. LEXIS 161791, at *4-5 (N.D. Cal. Dec. 2, 2015) (citations omitted) (finding the YouTube TOS not unconscionable). Though contracts of adhesion are sufficient to "establish some degree of procedural unconscionability," it "does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided." *Id.* at *5 (citations omitted).

Plaintiff's assertion that the governing agreements are contracts of adhesion is not enough to demonstrate unconscionability. He must also show that the agreements are substantively unconscionable, which he does not. Nor can he. Indeed, courts regularly find various clauses in Google's agreements not unconscionable and enforce their terms. *See, e.g.*, *Schneider v. YouTube, LLC*, 2023 U.S. Dist. LEXIS 1878, at *32 (N.D. Cal. Jan. 5, 2023); *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 197 (2015). In fact, in this very case, the Southern District of Mississippi analyzed the exact terms at issue here for unconscionability under California law and concluded that "the terms are not unconscionable." Tr. Order at 11, ECF No. 19. This Court should do the same. Even if the agreements that govern this claim are adhesive, they are not unconscionable and must be enforced.

## II. PLAINTIFF FAILS TO ASSERT THAT GOOGLE PROMISED HIM PAYMENT IN OTHER EMAIL COMMUNICATIONS

In addition to Plaintiff's central claim that Google owes him $22.00 per view of his videos, he appears to assert that Google promised to pay him several fixed sums by claiming that "Ray is owed the earnings that Google identified after its investigation" (Opp. at 9) and "[t]he allegations of the Amended Complaint sought recovery of all amounts owed him" (Opp. at 10). In apparent support of this contention, Plaintiff inserts into his Opposition portions of various purported communications with Google containing dollar amounts that Plaintiff alleges Google owes him. *See* Opp. at 3, 5, 9-10 (asserting Google promised to pay Plaintiff $7.5 million); Opp. at 3-5, 9 ($2.5 million); Opp. at 5 ($10,758,000); Opp. at 3 ($400,463.63 in estimated earnings). To the extent that Plaintiff asserts Google breached a promise to pay him any amount set forth in an email communication, including the four emails identified here, his assertion fails. All the purported promises are dubious at best. Further, with one exception, they are beyond Plaintiff's First Amended Complaint.

For the reasons discussed in Section I.A, *supra*, Google objects to Plaintiff's reliance on email communications because they are improperly incorporated and of questionable authenticity. Of particular interest here are the following:

- Plaintiff appears to assert that page 4 of Exhibit C of Plaintiff's Response to Motion to Transfer or Dismiss (ECF No. 11-3) is a letter in which YouTube CEO Susan Wojcicki promised to pay him $7.5 million. ECF No. 11-3 at 4; *see also* AC at 4; Opp. at 3, 5, 9-10. Setting aside the implausibility of YouTube's CEO communicating with Plaintiff about a "monthly salary" of $7.5 million, that document is littered with typographical and grammatical errors (*i.e.*, "were [*sic* we're] happy," "you've also reach [*sic* reached]," "we would be happily [*sic* happy] to assist you"), it is undated, it appears to be cut off in places, and Plaintiff provides no information as to the source of the image appearing on the page.

- Plaintiff appears to assert that page 8 of Exhibit C (reproduced in part on page 4 of Plaintiff's Opposition) is an email from Google stating that Google wired $2.5 million to Plaintiff's bank. ECF No. 11-3 at 8; *see also* Opp. at 3-4. However, a portion of the text of that document matches on a character-by-character basis the text that appears in a purported email set forth on page 7 of Exhibit C—right down to a grammatical error ("to be deposit [*sic* deposited] on 1/22/22")—sent from group3revenue@gmail.com, an email address of a Gmail user, not Google. *Compare* Ex. C at 7 *with* Ex. C at 8, ECF No. 11-3.

- Plaintiff appears to assert that page 13 of Exhibit C (reproduced in part on page 5 of Plaintiff's Opposition) is an email from AdSense promising to send $10,758,000 to Plaintiff. ECF No. 11-3 at 13; *see also* Opp. at 5. However, the sending email addresses do not match up: the version in the Opposition is from rayrobert488@gmail.com, an email address not associated with Google, and the version in Exhibit C is purportedly from adsense-noreply@google.com but suspiciously lacks a closing bracket and Plaintiff does not offer anything to show it came from Google. *Compare* Opp. at 5, ECF No. 33 *with* Ex. C at 13, ECF No. 11-3.

- Plaintiff appears to assert that page 5 of Exhibit C is "a graph claiming $400,446.63 estimated earnings" (hardly a promise) sent by YouTube. ECF No. 11-3; *see also* Opp. at 3. However, the message appears to have originated from the email address sj2612074@gmail.com, again an email address of a Gmail user, not Google.

There is nothing to suggest these documents came from Google, and strong reason to believe they did not. The Court should not consider them.

Furthermore, this Court should decline to consider any claim that Google promised to pay Plaintiff any amount not alleged in the First Amended Complaint, including the amounts in Plaintiff's Opposition for $2.5 million, $400,463.63, and $10,758,000. [3]

---

[3] The alleged communication from YouTube CEO Susan Wojcicki promising to pay Plaintiff a monthly salary of $7.5 million (addressed in the first bullet, *supra*) is the only document that relates

(continued...)

## III. PLAINTIFF'S CLAIMS ARE TIME-BARRED UNDER THE GOVERNING AGREEMENTS

Plaintiff does not dispute the validity of the Limitation on Legal Action clause in the YouTube TOS or the payment dispute clause of the AdSense TOS. He also does not provide a reason for this Court to depart from previous decisions where it enforced the same or materially similar clauses. Instead, he simply argues they do not apply because he timely raised his claim in accordance with the clauses. Opp. at 6, 10-11. He did not. Both clauses are valid and should be enforced to bar Plaintiff's claim.

### A. The One-Year Limitations Period in the YouTube TOS Applies and Bars Plaintiff's Claim.

As discussed in Google's Motion, the Limitation on Legal Action clause of the YouTube TOS requires that "ANY CAUSE OF ACTION ARISING OUT OF OR RELATED TO THE SERVICES MUST COMMENCE WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES" or else the claim is waived. Mot. at 14, quoting Hawkins Decl. Ex. 1 at 16. Plaintiff appears to argue that the accrual of the claim began "immediately after Google notified him on November 25, 2021, that the money transfer had been sent to his account and he saw it wasn't there." Opp. at 10.[4] Plaintiff filed his Complaint on January 25, 2023 (ECF No. 1), fifteen months after he argues his claim accrued. By Plaintiff's own math, his claim is barred.

This timeliness issue has already been resolved in, inter alia, *Schneider v. YouTube, LLC*, 2023 U.S. Dist. LEXIS 1878, at *34 (N.D. Cal. Jan. 5, 2023). This court should follow suit. *See also Darnaa*, 2015 U.S. Dist. LEXIS 161791, at *12-13.

---

to any allegation in Plaintiff's First Amended Complaint. AC at 4. The other three documents appeared for the first time in connection with Plaintiff's Response to Motion to Transfer or Dismiss, ECF No. 11-3. Courts "cannot consider new facts raised in opposition when deciding whether a complaint is sufficiently pled." *Ehab Ahmed v. Wormuth*, 2023 U.S. Dist. LEXIS 33430, at *9 (N.D. Cal. Feb. 28, 2023) (Hixson, J.) (declining to consider documents attached to Plaintiff's opposition).

[4] The date of November 25, 2021, appears in the purported Susan Wojcicki letter in the following context: "you've also reach [*sic* reached] 50,000 dollars on social blade which will be added to your payment on 11/25/21." ECF No. 11-3 at 4.

### B. The Thirty-Day Dispute Period in the AdSense TOS Applies and Bars Plaintiff's Claim.

Under the payment dispute clause of the AdSense TOS, Plaintiff agreed to "notify Google within 30 days" of a disputed non-payment, and if he does not, "any claim related to the disputed payment . . . is waived." Mot. at 15, quoting Hawkins Decl. Ex. 3 § 6. Plaintiff argues he "gave timely notice immediately after Google notified him on November 25, 2021." Opp. at 6. However, as discussed in Google's Motion, Plaintiff appears to allege that Google owed Plaintiff $22.00 per-view starting in August 2021. Mot at 15, citing AC ¶ 7. If payment was due to Plaintiff by "the 21-26th of each month" as alleged by Plaintiff (*see* Opp. at 2), then payment was due by September 26, 2021, at the latest. This means the AdSense payment dispute clause required Plaintiff to notify Google of the non-payment dispute by no later than October 26, 2021. At the very earliest, Plaintiff alleges he disputed nonpayment on November 25, 2021, a full month after the 30-day period lapsed. Thus, Plaintiff waived his right to bring a claim for nonpayment. This Court should follow the decision in *Free Range Content, Inc. v. Google Inc.* and enforce the AdSense payment dispute clause to bar Plaintiff's claim. 2016 U.S. Dist. LEXIS 64365, at *39 (N.D. Cal. May 13, 2016).

Since Plaintiff cannot amend his Complaint to overcome the Limitation on Legal Action clause or the payment dispute clause, further amendment would be futile and Google respectfully requests that the Court dismiss Plaintiff's First Amended Complaint without leave to amend.

### IV. GRANTING PLAINTIFF LEAVE TO AMEND HIS BREACH OF CONTRACT CLAIM OR TO ADD A CLAIM FOR FRAUD IN THE INDUCEMENT WOULD BE FUTILE

Granting Plaintiff leave to amend his breach of contract claim would be futile. Granting Plaintiff leave to add a claim for fraud in the inducement would also be futile. In an attempt to save his case from complete dismissal, Plaintiff urges this Court to allow him to amend his complaint "to allege a claim of fraudulent inducement." Opp. at 11. In so doing, he cites case law reciting the elements of fraudulent inducement and supporting the availability of tort damages for such claims but fails to explain what alleged misrepresentation—the first element of fraudulent inducement—he could plead that was made by Google. *Id.*, citing *Dhital v. Nissan N. Am., Inc.*, 84 Cal. App. 5th 828, 838 (2022). Nor can he. It appears Plaintiff intends to base his claim on the

payment structure of the agreed 55% net revenues under the YPP Terms, referring to it as "minuscule revenue." Opp. at 11. But Google did not make any misrepresentation regarding the payment scheme of 55% net revenues under the YouTube Partner Program. The YPP Terms clearly state 55% as the payment structure, and Plaintiff agreed to those terms. Because Plaintiff cannot state a claim for fraudulent inducement, and did not state such claim within the one year statute of limitations discussed in Section III.A *supra*, leave to amend would be futile.

## CONCLUSION

For the reasons set forth above, Google respectfully requests that the Court dismiss the First Amended Complaint without leave to amend because Plaintiff failed to plead facts sufficient to state a claim for breach of contract, the claims are time-barred, and further amendment would be futile.

Respectfully submitted,

Dated: October 31, 2023

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: */s/ Matthew R. Reed*
　　　Matthew R. Reed

*Attorneys for Defendant
Google LLC*