UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT JAMES RAY,<br><br>    Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 23-cv-04222-TSH<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 30 |

## I. INTRODUCTION

Plaintiff Robert James Ray, a YouTube user proceeding pro se, alleges Defendant Google LLC failed to pay him up to $22 per view of content on his YouTube channel. Pending before the Court is Google's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 30. Ray filed an Opposition (ECF No. 33) and Google filed a Reply (ECF No. 34). The Court finds this matter suitable for disposition without oral argument and **VACATES** the November 9 hearing. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS** the motion.[1]

## II. BACKGROUND

**A. Ray's Participation in YouTube's Partner Program**

Google operates YouTube, an online service for sharing and watching videos and related content. First Am. Compl. ("FAC") ¶ 6, ECF No. 6. YouTube users who upload videos to YouTube and earn sufficient viewership may be eligible for the YouTube Partner Program ("YPP"), through which participants can earn a share of the revenue from third party

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 26, 27.

1  advertisements shown in connection with videos they post to the service. *Id.* ¶ 7; Hawkins Decl. ¶
2  4, ECF No. 8-1.[2] To participate in the YPP, participants must consent to three agreements: the
3  YouTube Terms of Service ("YouTube TOS"), the YouTube Partner Program Terms ("YPP
4  Terms"), and the Google AdSense Online Terms of Service ("AdSense TOS"). FAC ¶¶ 6-7;
5  Hawkins Decl. ¶¶ 3-5.

6  Ray, a resident of Mississippi, is a YouTube user named Robert J. Ray "doing business as
7  'The Organism Chapter 4.'" FAC ¶ 4. Ray "contracted" with YouTube in December 2020 "to
8  become an authorized 'content creator,'" "with the goal to become a YouTube Partner and having
9  my channel monetized to earn income." *Id.* ¶ 7; Opp'n at 2. He began posting videos in
10 December 2020 and, after about eight months, had posted "some 50 videos on YouTube"
11 garnering "over 317,000 views." FAC ¶ 7.

12 YouTube users who wish to upload videos to YouTube must agree to the YouTube TOS.
13 *Id.* ¶¶ 6-7 ("Nobody is allowed by Google to have its video creations on YouTube, except ones
14 who signs [sic] a contract with Google"); Hawkins Decl. ¶¶ 2-3 & Ex. 1 at 2-3. Prospective YPP
15 participants who seek to earn revenue from their videos must also agree to be bound by the YPP
16 Terms, a separate agreement which incorporates the YouTube TOS and governs participation in
17 the program. FAC ¶ 7 ("[D]etails of . . . the contract relationship" can be found at

---

[2] The Court refers to the Declaration of Brian Hawkins and attached exhibits 1-3 filed with Google's original Motion to Transfer or, in the Alternative, to Dismiss in the Southern District of Mississippi. ECF Nos. 8-1 through 8-4. A district court generally may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam); *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). If "matters outside the pleading are presented to and not excluded by the court," the court must treat the motion as a Rule 56 motion for summary judgment. *See* Fed. R. Civ. P. 12(d). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Ray refers extensively to these documents in his complaint, and they form the basis for his breach of contract claim. *See* FAC ¶ 6 ("Nobody is allowed by Google to have its video creations on YouTube, except ones who signs [sic] a contract with Google") (appearing to refer to the YouTube Terms of Service), *id.* ¶ 7 (describing the "contract relationship" between Ray and Google under the YouTube Partner Program) (appearing to refer to the YPP Terms), *id.* ¶ 8 (describing a contract related to AdSense) (appearing to refer to the AdSense Terms of Service). These documents are therefore incorporated by reference in the FAC, and the Court may consider them in ruling on this motion. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Daniels v. Alphabet Inc.*, 2021 WL 1222166, at *2 (N.D. Cal. Mar. 31, 2021) (judicially noticing YouTube's Terms of Service and YPP Terms under the doctrine of incorporation).

"'support.google.com' under the section entitled 'YouTube Partner Program overview and eligibility-Google.'"); Hawkins Decl. ¶ 4. Section 1 of the YPP Terms describes how YouTube shares advertising revenue with YPP participants: "YouTube will pay [the participant] 55% of net revenues recognized by YouTube from ads displayed . . . in conjunction with the streaming of [the participant's] Content" and "YouTube will pay [the participant] 55% of the total net revenues recognized by YouTube from subscription fees." Hawkins Decl., Ex. 2; *see also* FAC ¶ 7 ("compensation was to be exclusively based [on] a percentage of the fees paid"). The YPP Terms state as follows: "These Terms replace all previous or current agreements between you and YouTube relating to the YouTube Partner Program, including any prior monetization agreements that are in effect between you and YouTube." Hawkins Decl., Ex. 2 § 6. Ray alleges he joined the YPP "after about eight months of posting videos." FAC ¶ 7.

YPP participants must create an AdSense account to receive payment through Google's AdSense program. That is, participants must accept the AdSense TOS. Hawkins Decl. ¶ 5, Ex. 2 § 2, and Ex. 3 § 1. Section 5 of the AdSense TOS describes how users "will receive a payment related to the number of valid clicks on Ads displayed on your Properties [e.g., mobile content], the number of valid impressions [e.g., views] of Ads displayed on your Properties, or other valid events performed in connection with the display of Ads on your Properties," but the AdSense TOS does not provide for payment of a specific fixed dollar amount per view or per ad. *Id.*, Ex. 3 § 5. Ray alleges he created an AdSense account. FAC ¶ 8 ("contract with Defendant through Defendant's 'Adsense' division for placement of advertisements to be embedded in each of Plaintiffs videos").

**B.     Ray's Claim Against Google and Procedural Background**

On January 25, 2023, Ray filed his original complaint in the U.S. District Court for the Southern District of Mississippi. ECF No. 1. On March 13, 2023, he filed the operative FAC, alleging breach of contract. Ray alleges he had a contract with Google that "provided that Plaintiff would be paid the sum of up to $22.00 per public view . . . occurring during the monetization period." FAC ¶ 7. He alleges Google breached the agreement by not paying "a per-view amount of $22.00 per view." *Id.* ¶ 8. Ray also alleges Google communicated to him an

3

1  amount of revenue Google owed to him: "Defendant sent Plaintiff an email letter informing him of
2  the dollar amount of his accumulated revenue under the contractual relationship, informing
3  Plaintiff that the amount owed to him was $7.5 Million." *Id.* ¶ 10.  According to Ray, by virtue of
4  breaching the contract, Google owes him "$15,000,000.00 at least." *Id.* ¶ 11.  He also alleges that
5  by virtue of the alleged breach he has suffered "great mental pain and suffering in the amount of
6  $3,000,000.00," and that "he is entitled to punitive damages, in the amount of $20,000,000.00."
7  *Id.* ¶¶ 12-13.  In total, Ray seeks $38,000,000, and though he is pro se, he also requests attorney's
8  fees.  *Id.* ¶¶ 12-14.

9  On March 27, 2023, Google moved to transfer the case to this District pursuant to the
10  forum selection clauses in the YouTube TOS and AdSense TOS.  ECF No. 8.  On August 18,
11  2023, Judge Johnson of the Southern District of Mississippi granted Google's motion to transfer.
12  ECF No. 19.

13  Google filed the present motion on October 4, 2023, arguing: (1) the only agreement
14  between Google and Ray that provides the payment terms under which Google would compensate
15  him does not promise any payment on a per-view basis, much less $22 per view; (2) Ray waived
16  any right to recover under two separate clauses of the governing agreements: a Limitation on
17  Legal Action clause, which requires he bring his claim within one year of accrual, and a payment
18  dispute clause, requiring he attempt to resolve this dispute through Google's appeal process before
19  filing suit; and (3) even if he could bring his claim, Ray is not entitled to recover punitive
20  damages, damages for pain and suffering, or attorney's fees as a matter of law.

### III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted).  Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV.    DISCUSSION

### A.    Choice of Law

In determining the controlling substantive law, a federal court sitting in diversity must look to the forum state's choice of law rules. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) (citing *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941)). Under California law, a choice of law provision will be enforced when: (1) the chosen state has a substantial relationship to the parties or their transaction, or there is any other reasonable basis for the parties' choice of law; and (2) the chosen state's law is not contrary to a fundamental policy of California. *Nedlloyd Lines B.V. v. Superior Court of San Mateo*, 3 Cal. 4th 459, 464-66 (1992); *Windsor Mills, Inc., v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 995-96 n. 6 (1972) (parties may expressly agree

1 what law shall govern their contract).

2     Under the choice of law provisions in the parties' agreements, California law applies to this dispute. Hawkins Decl., Ex. 1 at 16 ("All claims arising out of or relating to these terms or the Service will be governed by California law"); *id.*, Ex. 2 at 1 (YPP Terms incorporating by reference the YouTube TOS and thus its California choice of law provision); *id.*, Ex. 3 at 6 (AdSense TOS choice of law provision requiring California law to govern disputes arising from its terms). Applying the California law approach, the Court concludes that California bears a substantial relationship to the parties' transaction because Google is a resident of the State and enforcing the parties' choice of law provision is not contrary to any fundamental policy of California. *See Nedlloyd Lines B.V.*, 3 Cal. 4th at 467 (A substantial relationship is present when "one of the parties is domiciled" in the chosen state.); *MDOF Wells, LLC v. Total Prop. Sols., Inc.*, 2022 WL 18456822, at *4 (N.D. Cal. Dec. 12, 2022), *report and recommendation adopted*, 2023 WL 375345 (N.D. Cal. Jan. 24, 2023) (finding California bore substantial relationship to the parties' transaction where defendants were residents of the state and enforcing the parties' choice of law provision was not contrary to any fundamental policy of the state of California). Accordingly, Ray's contractual claims are governed by California law.

**B.    Whether Ray's Claim Is Time-Barred**

    Under the Limitation on Legal Action clause of the YouTube TOS, all claims must be brought within one year after accrual of the cause of action: "YOU AND YOUTUBE AGREE THAT ANY CAUSE OF ACTION ARISING OUT OF OR RELATED TO THE SERVICES MUST COMMENCE WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES. OTHERWISE, SUCH CAUSE OF ACTION IS PERMANENTLY BARRED." Hawkins Decl., Ex. 1 at 16. Ray does not dispute the validity of the Limitation on Legal Action clause in the YouTube TOS or the payment dispute clause of the AdSense TOS. Google argues Ray's claim accrued when Google allegedly breached its promise to pay him $22 per view of his videos, on or around August 2021. Mot. at 10 (citing FAC ¶ 7). Thus, because Ray brought suit nearly 17 months later, his claim must fail.

    Under California law, "[t]he ordinary statute of limitations for breach of a written contract

is four years." Cal. Civ. Proc. Code § 337; *Vu v. Prudential Prop. & Cas. Ins. Co.*, 26 Cal. 4th 1142, 1148 (2001). However, "statutes of limitations provide only a default rule that permits parties to choose a shorter limitations period." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 107 (2013). "'[I]n the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period.'" *Id.* (quoting *Order of United Com. Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947)). And, as another judge in this District has noted regarding the Limitation on Legal Action clause of the YouTube TOS, "a one-year limitations period is not unduly one-sided or shocking in any respect. It is reasonable for YouTube to require users to accept a contract that provides it with a 'margin of safety' 'for which it has a legitimate commercial need' because it provides a service to millions of users." *Schneider v. YouTube, LLC*, 649 F. Supp. 3d 872, 888 (N.D. Cal. 2023) (dismissing plaintiff's claims that fell outside of the one-year limitations period) (quoting *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 912 (2015)).

Although Google argues his claim accrued on or around August 2021, which is when Ray became eligible for the YPP, it is not clear that Ray's claim is so limited. Construing the pleadings in the light most favorable to him, he alleges an ongoing violation in that "Defendant has continued to the present to generate unto itself, without any payment made to Plaintiff and Plaintiff states that he is owed $15,000,000.00 at least." FAC ¶ 11. While Google focuses on August 2021, Ray's claims are not so limited.

Google also argues the payment dispute clause set out in Section 6 of the AdSense TOS agreement bars Ray from recovery. Mot. at 11. Under that section, Ray agreed to "notify Google within 30 days" of a disputed non-payment and states that "[if] you do not, any claim related to the disputed payment . . . is waived." Hawkins Decl., Ex. 3. Google again focuses on Ray's allegation that by August 2021—roughly eight months after he joined YouTube in December 2020—Google owed him up to $22 per-view. *Id.* (citing FAC ¶ 7). Thus, because Ray does not allege he notified Google by September 2021 of the non-payments he disputes, Google contends

7

1  Section 6 remains an independent bar to his claims. It is possible that the 30-day notice period
2  could bar Ray's claims. *See Free Range Content, Inc. v. Google Inc.*, 2016 WL 2902332, at *13
3  (N.D. Cal. May 13, 2016) (enforcing a previous version of this same provision of the AdSense
4  TOS, finding reasonable the 30-day time period to notify Google and dismissing all claims that
5  plaintiffs failed to submit to Google within the 30-day time period as provided by the agreement)
6  (citing *Feldman v. Google Inc.*, 513 F. Supp. 2d 229, 243 (E.D. Pa. 2007) (upholding and
7  enforcing 60-day claim period in Google's AdWords Agreement)). However, because Ray alleges
8  ongoing violations in this case, the Court finds his claim is not limited to the month of August
9  2021.

10  Accepting Ray's factual allegations as true, the Court cannot say at this stage in the
11  proceedings that his claim is time barred in its entirety. Accordingly, the Court denies Google's
12  motion as to its argument that Ray waived his right to bring this action under the YouTube and
13  AdSense agreements.

### C.  Breach of Contract

Under California law, "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 124 (2015) (citing *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)).

#### 1.  The Language of the Contract Governs

Ray alleges he joined the YPP program, which requires acceptance of the YouTube TOS, the YPP Terms, and the AdSense TOS. FAC ¶¶ 6-7; Hawkins Decl. ¶¶ 3-5 & Exs. 1-3. None of these agreements provides that Google will pay Ray $22 per view of his videos, or any other dollar amount. In fact, two of the agreements do not discuss the payment scheme at all: the language of the YouTube TOS expressly states that it "does not entitle [users] to any payments," Hawkins Decl., Ex. 1 at 10, and the AdSense TOS provide for methods and rights related to payment, but do not specify an amount Google owes to Ray, *id.*, Ex. 3. The only agreement that describes how to calculate payment by Google for participation in the program is the YPP Terms,

8

which state that "YouTube will pay [Ray] 55% of net revenues recognized by YouTube from ads displayed . . . in conjunction with the streaming of your Content" and "55% of the total net revenues recognized by YouTube from subscription fees." Hawkins Decl., Ex. 2 § 1.

"[F]ew principles of our law are better settled, than that '[t]he language of a contract is to govern its interpretation, if the language is clear and explicit.'" *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 375 (1992). Here, the language of the YPP Terms is clear: Google will pay Ray 55% of net revenues from advertisements run alongside his videos and 55% of net revenues from YouTube channel subscription fees. Hawkins Decl., Ex. 2, § 1. Ray's allegation that Google promised him $22.00 per view of his videos, or any other per-view payment arrangement, is contrary to the clear and explicit meaning of the YPP Terms governing payment under the program. As such, there can be no breach because Google had no obligation to provide Ray with a fixed dollar amount for each view of his YouTube videos, and any allegation otherwise is contrary to the terms of the parties' agreement. *See Scott v. Sec. Title Ins. & Guarantee Co.*, 9 Cal. 2d 606, 614 (1937) ("Breach of contract rests upon a failure to perform an enforceable obligation, and if there is no such obligation there can be no breach."); *Murphy v. Hartford Accident & Indem. Co.*, 177 Cal. App. 2d 539, 543 (1960) ("In order for an action to be based upon an instrument in writing, the writing must express the obligation sued upon."); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 978 (N.D. Cal. 2016) ("With respect to . . . the need to plead the contract—a plaintiff must, in actions involving breach of a written contract, 'allege the specific provisions in the contract creating the obligation the defendant is said to have breached.'") (quoting *Young v. Facebook, Inc.*, 790 F.Supp.2d 1110, 1117 (N.D. Cal. 2011)); *Rankin v. Glob. Tel\*Link Corp.*, 2013 WL 3456949, at \*14 (N.D. Cal. July 9, 2013) ("To state a claim for breach of contract based on the terms and conditions, [a party] must identify a specific contractual obligation that was breached.")

In his opposition, Ray does not proffer any viable reason to depart from the express language of the YPP Terms. He provides no evidence of an agreement where Google promised to pay him $22.00 per view, as he alleged. He even admits he "cannot find the Google promise [to pay] 'up to $22.00' per view." Opp'n at 1. Instead, Ray advances two primary arguments: that

Google has a "contract duty to pay the Creator per each view of his channel" pursuant to a document dated February 5, 2022, and that the governing agreements are unconscionable as invalid contracts of adhesion. *Id.* at 9-10.

### 2. Contractual Duty to Pay on a Per-View Basis

Ray argues Google had "a contract duty" to provide payment on a per-view basis. In support of this argument, he provides a snippet of text from a 2022 document, which Ray contends is correspondence from Google. Opp'n at 9 (citing Pl.'s Resp. to Moti. to Transfer or Dismiss, Ex. C, ECF No. 11-3). The text Ray provides states that "estimated monetized playbacks are the number of times your video was watched with ads. Advertising revenue is based on a number of different factors and may not be directly correlated to video views." *Id.* Even taken as true,[3] however, this text does not support Ray's claim and in fact contradicts his assertion that Google promised to pay him each time his video was viewed. To the contrary, the document states that "total revenue depends on several things, including [but not limited to] which ad format appears, what the advertiser paid, and the amount of times your video was viewed." Pl.'s Resp. to Mot. to Transfer or Dismiss, Ex. C at 10, ECF No. 11-3. That is, even if taking Ray's position as true, the document does not support his contention that Google must pay him solely on the number of views his videos garnered, much less $22.00 for each such view.

In addition to his central claim that Google owes him $22.00 per view of his videos, Ray appears to assert that Google promised to pay him several fixed sums by claiming that "Ray is owed the earnings that Google identified after its investigation" (Opp'n at 9) and "[t]he allegations

---

[3] Google challenges this and all other documents on which Ray relies, arguing they have not been properly submitted and are of unknown origin. Reply at 3. The Court agrees. Courts "regularly decline to consider declarations and exhibits submitted in support of or in opposition to a motion to dismiss . . . if they constitute evidence not referenced" in the complaint. *Gerritsen v. Warner Bros. Entm't, Inc.*, 112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015) (internal citation omitted). Ray offers no basis for why the Court should consider this document or any of the other documents submitted by him. For example, Ray does not explain how documents purporting to be private communications between two parties are "generally known" or can be accurately determined from credible sources, as required for judicial notice. *See* Fed. R. Evid. 201(b)(1)-(2). Nor does he explain how the correspondence supports his $22.00 per-view claim as required for incorporation by reference. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). No document sets forth a promise of $22.00 per view. As such, the document is not properly before this Court.

10

of the Amended Complaint sought recovery of all amounts owed him" (*id.* at 10). In support of this contention, Ray inserts into his opposition portions of various purported communications with Google containing dollar amounts that he alleges Google owes him. *See* Opp'n at 3, 5, 9-10 (asserting Google promised to pay Plaintiff $7.5 million); *id.* at 3-5, 9 ($2.5 million); *id.* at 5 ($10,758,000); *id.* at 3 ($400,463.63 in estimated earnings). However, the Court does not consider these materials as they are improperly incorporated and of questionable authenticity.[4]

### 3. Unconscionability

Ray also argues "[t]he contracts are 'unconscionable' and should not for failure of inclusion of the 'up to $22.00' per view to authorize dismissal. Ray never consented to the 'complexity' of calculating his earnings under the Adsense advertising formula. He never allowed or expedited any 'invalid' views." Opp'n at 12. California statutorily recognizes unconscionability as a generally applicable contract defense. *See* Cal. Civ. Code § 1670.5(a) ("If the court as a matter of law finds the contract or any clause of the contract to have been

---

[4] For example:
- Ray appears to assert that page 4 of Exhibit C of his response to Google's motion to transfer or dismiss is a letter in which YouTube CEO Susan Wojcicki promised to pay him $7.5 million. ECF No. 11-3 at 4; Opp'n at 3, 5, 9-10. Setting aside the question of whether YouTube's CEO would communicate with Ray about a "monthly salary" of $7.5 million, that document is littered with typographical and grammatical errors (i.e., "were [sic we're] happy," "you've also reach [sic reached]," "we would be happily [sic happy] to assist you"), it is undated, it appears to be cut off in places, and Ray provides no information as to the source of the image appearing on the page.
- Ray appears to assert that page 8 of Exhibit C is an email from Google stating that Google wired $2.5 million to his bank. ECF No. 11-3 at 8; Opp'n at 3-4. However, a portion of the text of that document matches on a character-by-character basis the text that appears in a purported email set forth on page 7 of Exhibit C—right down to a grammatical error ("to be deposit [*sic* deposited] on 1/22/22")—sent from group3revenue@gmail.com, an email that Google states is an address of a Gmail user, not Google, *see* Reply at 7. *Compare* Ex. C at 7 *with* Ex. C at 8, ECF No. 11-3.
- Ray appears to assert that page 13 of Exhibit C is an email from AdSense promising to send him $10,758,000. ECF No. 11-3 at 13; Opp'n at 5. However, the sending email addresses do not match up: the version in the opposition is from rayrobert488@gmail.com and the version in Exhibit C is purportedly from adsense-noreply@google.com. *Compare* Opp. at 5, ECF No. 33 *with* Ex. C at 13, ECF No. 11-3.
- Ray appears to assert that page 5 of Exhibit C is "a graph claiming $400,446.63 estimated earnings" sent by YouTube. ECF No. 11-3; Opp'n at 3. However, the message appears to have originated from the email address sj2612074@gmail.com, which Google states is an email address of a Gmail user, not Google. *See* Reply at 7.

11

1  unconscionable at the time it was made the court may refuse to enforce the contract, or it may
2  enforce the remainder of the contract without the unconscionable clause, or it may so limit the
3  application of any unconscionable clause as to avoid any unconscionable result."). "A finding of
4  unconscionability requires 'a procedural and a substantive element, the former focusing on
5  oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided
6  results.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011) (quoting *Armendariz v.
7  Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)).

### a. Procedural Unconscionability

Procedural unconscionability "focus[es] on 'oppression' or 'surprise' due to unequal bargaining power[.]" *Id.* (quoting *Armendariz*, 24 Cal. 4th at 114). "Oppression results from unequal bargaining power, when a contracting party has no meaningful choice but to accept contract terms. Unfair surprise results from misleading bargaining conduct or other circumstances indicating that party's consent was not an informed choice." *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 980 (2010). Under California law, the adhesive nature of a contract "is sufficient to establish some degree of procedural unconscionability." *Sanchez*, 61 Cal. 4th at 915. However, it "does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided." *Id.*

As other courts have noted, YouTube's TOS "involve only a marginal degree of procedural unconscionability" because "YouTube offers its hosting services at no charge," "plaintiff was free to take [his] video content elsewhere," and the terms of YouTube's TOS are not "obscured or hidden." *Darnaa, LLC v. Google, Inc.*, 2015 WL 7753406, at *2 (N.D. Cal. Dec. 2, 2015) (applying California law to YouTube's terms); *see also Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 62 (D.D.C. 2014) (finding no procedural unconscionability in YouTube's TOS because they were not "obscured or hidden" and plaintiffs "had a clear opportunity to understand the terms" and "did not lack meaningful choice); *Schneider*, 649 F. Supp. 3d at 887–88 ("To be sure, the TOS are adhesive and Schneider had no opportunity to negotiate their terms, but that is a minor degree of procedural unconscionability."). As such, the Court finds the level of procedural unconscionability to be slight.

### b. Substantive Unconscionability

Substantive unconscionability focuses "on 'overly harsh' or 'one-sided' results." *Concepcion*, 563 U.S. at 340 (quoting *Armendariz*, 24 Cal. 4th at 114). The inquiry is on "the fairness of the term in dispute." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997-98 (9th Cir. 2010) (quoting *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1101 (2002)). If the disputed term "is one-sided and will have an overly harsh effect on the disadvantaged party[,]" substantive unconscionability is present. *Id.* (citing *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1407 (2003)). But "[a] contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to shock the conscience.'" *Darnaa*, 2015 WL 7753406, at *2–3 (citation and quotation omitted).

Ray argues "[t]he Contracts are clearly tainted by 'unconscionability', i.e. fatally suffer from 'adhesion'." Opp'n at 10. However, the Court finds YouTube's TOS are not so one-sided as to "shock the conscience." Notably, courts have rejected similar unconscionability arguments about the terms under both California law and the laws of different states. *See Darnaa*, 2015 WL 7753406, at *2–3 (finding YouTube terms' limitations provision not unconscionable under California law); *Schneider*, 649 F. Supp. 3d at 888 ("It is reasonable for YouTube to require users to accept a contract that provides it with a 'margin of safety' 'for which it has a legitimate commercial need' because it provides a service to millions of users."); *Song fi, Inc.*, 72 F. Supp. 3d at 63–64 (citing cases and holding YouTube terms' forum-selection clause not unconscionable under District of Columbia law); *Trump v. YouTube, LLC*, 2021 WL 8398892, at *12 n.8 (S.D. Fla. Oct. 6, 2021) (finding YouTube terms' forum-selection clause not unconscionable under Florida law). In particular, in its order transferring this case, the Southern District of Mississippi analyzed the exact terms at issue here for unconscionability under California law and concluded that "the terms are not unconscionable." ECF No. 19 at 11. This Court finds the same. Even if the agreements that govern this claim are adhesive, they are not unconscionable and must be enforced.

### 4. Summary

In sum, the Court finds Ray's breach of contract claim fails as a matter of law. Ray does

13

1  not dispute that the YPP Terms, YouTube Terms of Service, and AdSense Online Terms of
2  Service govern his relationship with Google.  The YPP Terms expressly provide that Ray is
3  entitled to 55% of net revenues, if any, from advertisements displayed alongside his videos, not
4  $22.00 per video view as he alleges.

**D.      Leave to Amend**

Ray requests the Court allow him to amend his complaint to allege a claim of fraudulent inducement because he "has already described the minuscule revenue that would have been generated to him by mere 55% of net advertiser fees associated with his channel . . . ." Opp'n at 11.  "Fraud in the inducement is a subset of the tort of fraud.  It occurs when the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable." *Dhital v. Nissan N. Am., Inc.*, 84 Cal. App. 5th 828, 838 (2022) (cleaned up).  "The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Id.*  "Tort damages have been permitted in contract cases where . . . the contract was fraudulently induced." *Id.* (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 989–90 (2004)).

Here, Ray's own allegations show that Google did not misrepresent or omit material information about the parties' agreement.  The YPP Terms explicitly state that payment is on a percentage basis (55%), not a flat $22.00-per-view as Ray alleges.  Hawkins Decl., Ex. 2; *see also* FAC ¶ 7 ("compensation was to be exclusively based [on] a percentage of the fees paid").  Ray received these terms and agreed to be bound by them. FAC ¶ 6 ("Nobody is allowed by Google to have its video creations on YouTube, except ones who signs [sic] a contract with Google"); *id.* ¶ 7 ("[D]etails of . . . the contract relationship" can be found at "'support.google.com' under the section entitled 'YouTube Partner Program overview and eligibility-Google.'"); *id.* ¶ 8 ("contract with Defendant through Defendant's 'Adsense' division for placement of advertisements to be embedded in each of Plaintiffs videos").  Thus, because Ray cannot state a plausible claim for fraudulent inducement, leave to amend would be futile.

14

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Google's motion to dismiss. As leave to amend would be futile, this case is **DISMISSED WITH PREJUDICE**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: November 6, 2023

THOMAS S. HIXSON
United States Magistrate Judge

15